Trevor MAYERS, Petitioner,

v.

Janet RENO, Attorney General of the United States; Doris Meissner, as Commissioner of the Immigration and Naturalization Service; Robert Wallis, District Director, Immigration and Naturalization Service; and the Immigration and Naturalization Service, Respondents.

No. 97–2443–CIV.

United States District Court, S.D. Florida.

Aug. 25, 1997.

**1458**

Daniel Gelber, Holland & Knight LLP, Miami, FL, for Petitioners.

Dexter Lee, Asst. U.S. Atty., U.S. Attorney's Office, Miami, FL, for Respondents.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MORENO, District Judge.

This case presents the issue of the scope of judicial review over final orders of deportation (now called orders of removal) under the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Because the Court concludes that it lacks subject matter jurisdiction to consider Petitioner's claims, the Court denies the Petition for Writ of Habeas Corpus.

### Background

Petitioner Trevor Mayers is a 29 year old citizen of Barbados admitted to the United States as a lawful permanent resident on July 19, 1977. Since that time, he has continually resided in the United States. Petitioner's entire immediate family resides in the United States either as citizens or lawful permanent residents.

On January 20, 1993, Petitioner, pursuant to his guilty plea, was convicted of possession with intent to distribute more than fifty kilograms of marijuana in violation of 21 U.S.C. § 841. The district court sentenced Petitioner to be imprisoned for a term of thirty-three months. As a result of his cooperation with federal authorities, his sentence was ultimately reduced to five months.

Prior to his plea, Petitioner consulted an attorney regarding the impact his conviction would have on his immigration status. He was advised that his cooperation, contrition, and rehabilitation would make him eligible for a Section 212(c) waiver. At the time, Section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a), gave lawful permanent residents the right to apply for a waiver of the deportation order (based upon a prior criminal conviction) if they could point to factors such as ties to the United States, residence of long duration in the United States, the effect of deportation on the family, proof of rehabilitation, and other factors.

On November 15, 1993, the INS issued an Order to Show Cause commencing deportation proceedings against the Petitioner, pursuant to Section 241(a)(2)(A)(iii) of the INA. On July 7, 1994, Petitioner filed an Application for Advance Permission to Return to Unrelinquished Domicile, seeking a waiver of deportation under Section 212(c). Petitioner conceded deportability.

Petitioner's waiver hearing of July 13, 1995, was ultimately continued by the Immigration Judge until February 14, 1996. At that hearing the Immigration Judge indicated that she was inclined to grant Section 212(c) relief. A second hearing was scheduled for March 4, 1996, in order to admit additional testimony from the Petitioner's parents, who, at the time, were attending a funeral in Barbados. On February 29, 1996, the INS requested a continuance of the March 4 hearing because of a death in the family of the INS Assistant District Counsel handling the matter. The hearing was eventually held on April 30, 1996.

On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") into law. AEDPA amended INA Section 212(c) by eliminating a waiver of deportation for aliens deportable by reason of having committed, *inter alia,* any offense covered in Section 241(a)(2)(A)(ii) (multiple criminal convictions) for which both predicate offenses are covered by Section 241(a)(2)(A)(i). The parties agree that the Petitioner's conviction falls within this category.

At the April 30, 1996 hearing, the Government argued that, as a result of the AEDPA, Petitioner could no longer avail himself of Section 212(c). The Immigration Judge disagreed, noting that she would have granted Petitioner's relief prior to the effective date of the AEDPA had it not been for the continuance granted to the Government. She entered an order granting Petitioner's Section 212(c) relief finding that the AEDPA could not be applied retroactively.

The INS filed a notice of appeal to the Board of Immigration Appeals ("BIA"). Relying on its earlier decision in *Matter of Soriano*, Int. Dec. No. 3289 (BIA 1996), the BIA affirmed the Immigration Judge, finding that the AEDPA amendment to Section 212(c) did not apply to aliens who had filed a Section 212(c) application on or before the AEDPA's effective date.

On September 12, 1996, the Attorney General vacated the BIA's decision in *Soriano*, and on February 21, 1997, the Attorney General announced her opinion rejecting the BIA's previous analysis of the retroactive impact of the AEDPA. *Matter of Soriano*, slip op. (Atty.Gen. Feb. 21, 1997).

In view of the Attorney General's opinion, on March 17, 1997, the BIA granted an INS motion to reconsider its prior affirmance of Petitioner's grant of a § 212(c) waiver. The BIA found Petitioner to be statutorily ineligible for relief under Section 212(c) since he is "an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offense are covered by section 241(a)(2)(A)(I)." The BIA vacated its prior decision and dismissed Respondent's appeal.

 Petitioner was placed in deportation proceedings on April 1, 1997, and ordered deported on March 17, 1997. Petitioner was arrested on July 23, 1997, by the INS. On July 31, 1997, he filed a motion to this Court for a preliminary injunction which was granted the following day. The Respondents were restrained from removing Petitioner until August 21, 1997 at 5:10 p.m. On August 14, 1997, Petitioner was released from the Krome Detention Center on bond.[1] The INS ultimately agreed not to take any action to deport the Petitioner at least until Monday, August 25, 1997, at 5:30 p.m.

### Legal Analysis

In his habeas petition, Petitioner challenges his order of removal. Specifically,

---

1. Because the Petitioner was in custody at the time he filed the present petition and still faces an order of deportation, his release on bond does not impair his right to file a petition for habeas

Petitioner claims that Section 440(d) of the AEDPA may not be applied retroactively to bar him from obtaining relief from deportation under Section 212(c) of the INA. For the reasons stated below, this Court lacks subject matter jurisdiction to consider this claim.

In 1961, Congress, concerned with the proliferation and overlapping modes of review of deportation orders by federal courts, enacted 8 U.S.C. § 1105a which provided that the "sole and exclusive" procedure for challenging a final order of deportation was a direct appeal from the Board of Immigration Appeals to the court of appeals. However, the right to bring a habeas corpus action in a federal district court was expressly preserved as an exception to the "sole and exclusive" jurisdiction vested in the courts of appeals.

Recently, Congress has foreclosed this avenue of review. The AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") severely curtail the jurisdiction of federal courts to review orders of deportation. These twin acts are complex and somewhat overlapping, and it is no easy task to glean the effect of their combined amendment to the INA. Nevertheless, a careful reading of those acts makes two things clear: (1) federal district courts have been divested of jurisdiction to entertain habeas corpus challenges to deportation orders; and (2) whatever jurisdiction remains to review deportation orders lies with the federal courts of appeals.

### 1. The Antiterrorism and Effective Death Penalty Act

 As discussed above, prior to the enactment of the AEDPA, 8 U.S.C. § 1105a(a)(10) read: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." Sections 401(e) of the AEDPA struck this language, and Section 440(a) replaced it with the following:

corpus. *Marcello v. Immigration and Naturalization Service*, 634 F.2d 964, 968 (5th Cir.1981); *Mbiya v. Immigration and Naturalization Service*, 930 F.Supp. 609, 612 (N.D.Ga.1996).

Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii)(B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(I) *shall not be subject to review by any court.*

(emphasis added). Petitioner argues that habeas corpus review pursuant to 28 U.S.C. § 2241 survives this amendment because, pursuant to the "clear statement" rule, habeas corpus jurisdiction cannot be repealed by implication. *Felker v. Turpin,* —— U.S. ——, ——, 116 S.Ct. 2333, 2339, 135 L.Ed.2d 827 (1996). The Court reluctantly disagrees. By removing a clear grant of habeas jurisdiction and replacing it with sweeping language that forecloses all judicial review, Congress has plainly expressed its intent to repeal habeas corpus review where the alien is being deported for having committed one of the criminal offenses enumerated in Section 440(a), and the Court will not resort to formalistic methods of statutory interpretation to thwart clear congressional intent. *Accord Powell v. Jennifer,* 937 F.Supp. 1245, 1252 (E.D.Mich. 1996); *Mbiya v. Immigration and Naturalization Service,* 930 F.Supp. 609, 612 (S.D.Ga.1996).

### 2. Illegal Immigration Reform and Immigrant Responsibility Act

■ Consistent with one of its primary purpose of expediting the removal of unlawful aliens from the United States, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), enacted on September 30, 1996,[2] further reduces the role of federal courts in reviewing orders of removal. Section 306(a) of the IIRIRA states:

EXCLUSIVE JURISDICTION. Except as provided in this section *and notwithstanding any other provision of law,* no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders against any alien* under this chapter.

8 U.S.C. § 1252(g) (as amended by IIRIRA § 306(a)) (emphasis added). This provision limits an alien seeking judicial review of a deportation order to those avenues available in Section 1252 and otherwise divests federal courts of jurisdiction to hear such claims. *Auguste v. Attorney General,* 118 F.3d 723, 725 (11th Cir.1997) ("[N]o court has jurisdiction to review [orders of removal] except as provided by newly amended 8 U.S.C.A. § 1252."). It is clear that the only avenue of judicial review available under Section 1252 is an action initiated in a court of appeals. *Id.;* 28 U.S.C. § 2342(1994); 8 U.S.C. § 1252(b)(2) ("The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."). Finally, the phrase "notwithstanding any other provision of law" further refutes the Petitioner's argument that habeas corpus jurisdiction survives under the amended INA.

The Petitioner argues, and the Government freely acknowledges, that a conclusion that the Petitioner must seek whatever relief is available in the court of appeals is somewhat of a red herring. Pursuant to the IIRIRA Section 309(c)(4)(g),[3] the Petitioner's conviction of an aggravated felony will likely bar him from raising his claim even before the Eleventh Circuit Court of Appeals. The

---

**2.** This section went into effect on April 1, 1997, and pursuant to the IIRIRA, applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under [the INA]." Section 306(c)(1), 1996 U.S.C.C.A.N. (110 Stat.) at 3009–612; *see Auguste v. Attorney General,* 118 F.3d 723, 725 (11th Cir.1997).

**3.** Petitioner was placed in deportation proceedings prior to the IIRIRA's general effective date of April 1, 1997. He was ordered deported on March 17, 1997, which is more than thirty days

after the IIRIRA's enactment date of September 30, 1996. Therefore, Petitioner's case is governed by the Transition Rules for Judicial Review in IIRIRA Section 309. This is of no particular significance, as the IIRIRA's permanent provisions and its transitional rules contain virtually identical provisions governing judicial review for aliens deportable based on the commission of certain criminal offenses. *See* IIRIRA Section 309(c)(4)(G) (IIRIRA's transitional rules) and IIRIRA Section 306(a) (IIRIRA's permanent provisions, codified at INA Section 242).

effect of the IIRIRA, then, is to deprive the Petitioner of all opportunity for judicial review of the INS' order of removal. The Petitioner argues that this result is unacceptable from both a statutory and a constitutional perspective.

As a matter of statutory construction, however, this interpretation of Section 306(a) in fact makes sense and supports the Court's conclusion. When read in conjunction with Section 440(a) of the AEDPA, Section 306(a) of the IIRIRA provides further evidence of a Congressional intent to expedite the removal of aliens convicted of serious crimes by abolishing all judicial review of their orders of removal. And as discussed below, whatever the wisdom of this policy, it appears to be within Congress' constitutional authority.

### 3. Petitioner's Constitutional Claims

Having found that Congress has eliminated all avenues of judicial review of criminal orders of deportation, including the writ of habeas corpus, the only issue left to decide is whether that act is constitutional. Petitioner argues that the complete denial of judicial review violates the Separation of Powers, Due Process, and the Suspension Clause. Supreme Court and Eleventh Circuit case law seems to have foreclosed those arguments: "The Constitution does not give aliens the right to judicial review of deportation orders." *Auguste*, 118 F.3d at 727 (quoting *Boston–Bollers v. Immigration and Naturalization Service*, 106 F.3d 352, 355 (11th Cir.1997)); *accord Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952) ("No judicial review [of deportation orders] is guaranteed by the Constitution."). This follows from the long-standing principle that:

> the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete. Thus, in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens.

*Reno v. Flores*, 507 U.S. 292, 305–306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (internal quotation marks and citations omitted). No minimum amount of judicial oversight over the deportation of aliens seems to be constitutionally required: "The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised *entirely through executive officers, with such opportunity for judicial review of their action as congress may see fit to authorize or permit.*" *Carlson v. Landon*, 342 U.S. at 537, 72 S.Ct. at 532–533 (internal quotation marks omitted). The political branches can constitutionally wield this authority free from judicial oversight because "[d]eportation is not a criminal proceeding and has never been held to be punishment," *id.*, and therefore does not implicate the same liberty interests as criminal prosecution.

The logical implication of these cases is that aliens are not constitutionally guaranteed the right to habeas corpus as a vehicle for challenging orders of deportation. Indeed, it would appear Congress may lawfully divest the federal courts of jurisdiction to hear all challenges—habeas or otherwise—to INS deportation orders. Put another way, the decision to deport an alien is a political question firmly entrusted to the discretion of the Legislature and Executive and the self-regulation of the political process itself. The role of the judiciary in reviewing such decisions exists only to the extent that the other branches deem advisable.

However, although it appears that Congress may constitutionally divest the courts of all judicial review over removal orders, the Court need not ultimately reach that issue. Even if some minimum level of judicial review is constitutionally required by the Suspension Clause, it is clear that the Petitioner cannot meet the high threshold necessary to invoke such jurisdiction. Other courts addressing the issue have held that the although the recent amendments to the INA deprive courts of jurisdiction over statutory habeas claims, they leave constitutional habeas review intact. *See, e.g., Yang v. Immigration and Naturalization Service*, 109 F.3d 1185, 1196 (7th Cir.1997); *Mbiya v.*

*Immigration and Naturalization Service,* 930 F.Supp. 609, 612 (S.D.Ga.1996); *Powell v. Jennifer,* 937 F.Supp. 1245, 1252 (E.D.Mich.1996). Under such an approach, a court's habeas jurisdiction, although severely narrowed, is not eliminated; it can be invoked only in those cases where the petitioner can demonstrate a "fundamental miscarriage of justice," *Mbiya,* 930 F.Supp. at 612, or "grave constitutional error," *Powell,* 937 F.Supp. at 1252–1253. Those courts favoring this approach have found it to "preserve[ ] the balance between the Suspension Clause and Congress' plenary authority to control immigration." *Mbiya,* 930 F.Supp. at 612.

■ Whatever language is used to describe this heightened standard, it is plain that the Petitioner cannot meet its requirements. At its core, the Petitioner's claim is that the Attorney General erroneously interpreted the AEDPA and IIRIRA to apply retroactively. This hardly rises to the level of grave constitutional error or fundamental miscarriage of justice. As the Supreme Court made clear in *Heikkila v. Barber,* habeas corpus is not a substitute of direct review of a deportation orders, but functions only to enforce due process requirements. 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953). In other words, habeas corpus review examines not the decision to order the petitioner's deportation, but the process by which that decision was reached, and grants relief only when that process was so fundamentally lacking in fairness that it amounts to an unconstitutional restriction on the petitioner's liberty. Here, the Petitioner had no claim of right to a Section 212(c) waiver. The decision whether to grant him such a waiver was considered by two levels of INS review, and the Petitioner was ultimately refused a Section 212(c) waiver as a result of a carefully considered written opinion by the Attorney General finding that the provisions of the AEDPA and the IIRIRA apply retro-

actively. While the Petitioner objects to that conclusion, he cannot, under such circumstances, claim a grave constitutional error or fundamental miscarriage of justice. In short, even if constitutional habeas corpus survives the passage of the AEDPA and the IIRIRA, the Court cannot grant the relief that the Petitioner seeks.[4]

### *Conclusion*

In enacting the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigration Responsibility Act, Congress sought to expedite the removal of unlawful aliens from the United States. Under the new structure, all direct challenges to INS orders of removal shall be brought exclusively in the federal courts of appeals. For aliens convicted of certain crimes, even that limited review has been removed. Collateral attack of an order of removal by way of a habeas corpus challenge also appears to have been foreclosed.

Drastic though these measures might be, there appears to be no constitutional impediment that prohibits their implementation. The rules governing the relations of the United States with aliens are within the plenary powers of Congress, and the decision to order an alien's removal is a political question subject only to as much judicial oversight as Congress sees fit. Even if some minimal level of review is constitutionally required, the Petitioner fails to allege a miscarriage of justice so grave as to warrant its invocation. The Petitioner received the exacting procedural protections and judicial review that the Constitution requires during the criminal proceedings underlying his deportation order. His application for a waiver of deportation was carefully considered by an immigration judge and the Board of Immigration Appeals, and was ultimately decided

4. While this decision would appear to conflict with the recent decision of the Honorable James Lawrence King in *Robert Tefel, et al. v. Reno,* 972 F.Supp. 623 (S.D.Fla.1997), the two cases are reconcilable. In that case, Judge King found that he had jurisdiction to entertain a class action complaint filed by law-abiding Nicaraguan

refugees challenging the INS' decision to pretermit the refugees' suspension of deportation. Arguably, the claims of the plaintiffs in *Tefel*—that they were encouraged to relocate to the United States only to have their lives uprooted when the Government changed its policy—allege a funda-

by the Attorney General herself.[5] In weighing the goal of expediting the removal of aliens convicted of serious crimes with the need to provide procedural safeguards for their removal, Congress has decreed that these procedures are sufficient. This Court does not have jurisdiction to second guess that policy. Therefore, it is

ADJUDGED that the Petition for Writ of Habeas Corpus is DENIED.

mental miscarriage of justice sufficient to invoke constitutional habeas corpus jurisdiction.

5. Because Congress has so drastically reduced judicial review of INS orders of removal, the power of the executive branch, through the Attorney General, is awesome. Although the facts of this case do not rise to the level of a constitutional deprivation, they do appear to yield an unfair result. The Attorney General surely could, in her discretion, reconsider the societal interest in removing the Petitioner and grant the relief that the Petitioner would have received by the Immigration Judge had the proceedings not been continued at the request of the Government.