**Melvin B. MARRIOTT, Petitioner,**

v.

**John INGHAM, District Director Immigration & Naturalization Service Buffalo District Office, Janet Reno, Attorney General of the United States, Doris Meissner, Commissioner, Immigration & Naturalization Service, Immigration and Naturalization Service, Respondents.**

**No. 97–CV–6421L.**

United States District Court,
W.D. New York.

Jan. 7, 1998.

---

Stephen M. Brent, Rochester, NY, for Petitioner.

James W. Grable, Special Asst. U.S. Atty., I.N.S., Buffalo, NY, Frank W. Hunger, David V. Bernal, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, Hugh G. Mullane, Office of Immigration Litigation, Civil Div., Washington, DC, for Respondents.

*DECISION AND ORDER*

LARIMER, Chief Judge.

Petitioner, Melvin B. Marriott, an alien who is subject to a final order of deportation,

commenced this action by filing a petition for a writ of habeas corpus. Petitioner seeks an order reversing an order of the Board of Immigration Appeals ("BIA") that found him ineligible for a waiver of deportation under § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), and he seeks an order directing the BIA to hold a hearing on the merits of his application for § 212(c) relief.

## FACTUAL BACKGROUND

Marriott first entered this country in 1988 as a conditional permanent resident. The Immigration and Nationality Service ("INS") removed his conditional status in 1991.

In 1993, Marriott was convicted upon his guilty plea of possession of a controlled substance in the second degree. On December 4, 1994, the INS served Marriott with an order to show cause why he should not be deported pursuant to 8 U.S.C. § 1251(a)(2)(B)(i),[1] which made deportable any alien convicted of a drug offense. Marriott requested a waiver of deportation pursuant to § 212(c), which at the time provided that certain aliens who had lived in the U.S. for seven years, if subject to deportation for having committed crimes, could apply for a waiver of deportation at the discretion of the Attorney General.

On August 8, 1995, an Immigration Judge ("IJ") found that Marriott was not eligible for a § 212(c) waiver because he did not yet have seven years' residency in the United States. Marriott accrued seven years of residency shortly thereafter, on November 18, 1995. Therefore, on February 27, 1996, the BIA found that Marriott was eligible for § 212(c) relief, and remanded his case to the IJ.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law. Among other things, § 440(d) of AEDPA amended § 212(c) to eliminate the availability of a waiver of deportation for aliens who are deportable by reason of having committed a drug offense. Based on AEDPA, on June 24, 1996 an IJ found that Marriott was not eligible for a § 212(c) waiver, and ordered that he be deported. The BIA dismissed Marriott's appeal on July 7, 1997. The BIA relied in part on the Attorney General's decision in *Matter of Soriano*, Interim Dec. 3289 (A.G., Feb. 21, 1997), in which the Attorney General ruled that AEDPA § 440(d) applied to all cases pending on the date of AEDPA's enactment.

Marriott filed a petition for review of the BIA's decision with the Second Circuit in August 1997. That petition was withdrawn by stipulation in September 22, 1997. The Government states, and Marriott has not disputed, that the reason the petition was withdrawn was that it was untimely filed.

Marriott commenced this action on September 22, 1997. Jurisdiction is predicated on 28 U.S.C. § 2241, the "Suspension Clause" of the United States Constitution,[2] and 28 U.S.C. § 1331. His first claim is that he has been denied equal protection because the INS distinguished in certain respects between different classes of aliens when considering waiver of deportation. His second claim is that the INS has erroneously and unlawfully applied AEDPA retroactively to bar his application for § 212(c) relief. To the extent that AEDPA does purport to apply retroactively, Marriott maintains that it is unconstitutional on grounds of equal protection and substantive and procedural due process.

## DISCUSSION

■ The threshold question in this case is whether this court has jurisdiction to hear Marriott's claims. This question arises because courts' jurisdiction to hear challenges to final orders of deportation has been severely curtailed both by AEDPA and by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

Prior to the enactment of these acts, INA provided that judicial review of final orders

---

1. The provisions of former section 1251 have since been transferred to 8 U.S.C. § 1227.

2. "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. 1, § 9 cl. 2.

of deportation was available only in the courts of appeals. *See* Former 8 U.S.C. § 1105a; 28 U.S.C. § 2341. INA also stated, however, that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." *See* Former 8 U.S.C. § 1105a(a)(10). Most circuits took the view that under § 1105a(a)(10) and 28 U.S.C. § 2241, district courts did have some habeas corpus jurisdiction to hear challenges to final deportation orders. A minority of circuits, however, including the Second Circuit, held that district courts' habeas corpus jurisdiction was limited to certain matters collateral to deportation orders, such as an alien's conditions of confinement or the INS's denial of a stay of deportation pending disposition of a motion to reopen deportation proceedings. *See Garay v. Slattery,* 23 F.3d 744, 745 (2d Cir.1994). Habeas corpus in the district court was not viewed as a general vehicle for review of deportation orders.

As stated, AEDPA significantly reduced the availability of judicial review. Section 401(e) of AEDPA amended § 1105a(a) "by striking paragraph (10)," and § 440(a) of AEDPA replaced paragraph (10) with the following provision: "Any final order of deportation against an alien who is deportable by reason of having committed [certain crimes, including drug offenses] shall not be subject to review by any court."

Two provisions in IIRIRA, which was enacted on September 30, 1996, also had a substantial impact on judicial review of deportation orders. Section 306(a) of IIRIRA amended § INA 242(g), 8 U.S.C. § 1252(g), as follows: "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." IIRIRA also amended 8 U.S.C. § 1252(a)(2)(B)(ii), which previously gave federal courts habeas corpus jurisdiction to review the Attorney General's decisions concerning detention, release on bond, or parole pending final determination of deportability,

as follows: "Notwithstanding any other provision of law, no court shall have jurisdiction to review ... any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General..."

In addition, IIRIRA repealed § 212(c) altogether, replacing it with a rough equivalent dealing with "cancellation of removal." 8 U.S.C. § 1229b. That has no effect on Marriott, however, because IIRIRA's "transition" provisions make most of IIRIRA inapplicable to aliens who were in deportation proceedings on April 1, 1997. *See* IIRIRA § 309(a), in Notes to 8 U.S.C. § 1101.

■ There is one notable exception to IIRIRA's general rule that it does not apply to aliens in proceedings on April 1, 1997, however. As noted, § 306(a) of IIRIRA amended 8 U.S.C. § 1252(g), by adding the following provision: "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." Section 306(c) of IIRIRA also states that "section (g) of section 242 of the [INA] (as added by subsection (a)), shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." Pub.L. No. 104–208, 110 Stat. 3009 § 306(c) (1996), as amended by technical corrections on Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656 (1996).

The courts have been divided over the effective date of § 306(c), which does not contain an express effective date. Some courts have held that § 306(c) became effective when IIRIRA was enacted on September 30, 1996, *see, e.g., Vakalala v. Schiltgen,* No. C–97–0492, 1997 WL 102501 (N.D.Cal. Feb.26, 1997), while other courts have held that it, like most of the rest of IIRIRA, became effective on April 1, 1997. *See, e.g., Lalani v. Perryman,* 105 F.3d 334, 336 (7th Cir.1997). It is unnecessary to resolve this issue here, however, since Marriott filed his habeas corpus petition in this court after

April 1, 1997. Thus, § 242(g) applies to this action in any event. *See Thomas v. INS,* 975 F.Supp. 840, 845 (W.D.La.1997) (finding it unnecessary to decide issue, since petition was filed on April 3, 1997). As a consequence, § 242(g) by its terms bars this or any other court from hearing Marriott's claim "[e]xcept as provided in" 8 U.S.C. § 1252. That section provides for limited judicial review, but only in the courts of appeals. 8 U.S.C. § 1252(b)(2).

Because of the IIRIRA transition provisions, however, the review provided for under § 1252 does not apply to Marriott. With respect to aliens who were in proceedings on April 1, 1997 § 309(c)(1) provides that "the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments."

Untangling this statutory Gordian knot is not a simple task, as is evidenced by the large number of cases in which courts have struggled with sorting out the interplay of AEDPA, IIRIRA, and INA. What is clear, however, is that Marriott is not entitled to relief. Even before the enactment of AEDPA and IIRIRA, this court lacked jurisdiction to hear claims such as Marriott's, and AEDPA and IIRIRA, whatever their effects, certainly did not expand this court's jurisdiction.

■ Under existing law in this circuit, this court would lack jurisdiction over Marriott's claims even in the absence of AEDPA and IIRIRA. As noted above, prior to the enactment of those acts, the Second Circuit held the view that district courts' habeas jurisdiction was strictly limited to matters collateral to final orders of deportation. *Garay,* 23 F.3d at 745 (under former 8 U.S.C. § 1105a(a), judicial review of final orders of deportation was "available directly and exclusively in the federal courts of appeals," and therefore district court lacked jurisdiction to consider appeal from deportation order).

Obviously, nothing in either AEDPA or IIRIRA in any way confers or expands the jurisdiction of the district courts to hear challenges to final deportation orders. Although

Marriott contends that such jurisdiction exists under 28 U.S.C. § 2241, the unavoidable fact is that the Second Circuit has *never* recognized the existence of such jurisdiction in the district courts when an alien seeks relief from a final order of deportation.

The court in *Garay* did note that former § 1105(a)(10) provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings" in a district court. The court also held, however, that this jurisdiction was limited to review of an INS district director's denial of a stay of deportation, because such a decision by a district director is not directly related to the validity of the deportation order itself. *Id.* at 745–46; *Dibi v. Moyer,* 801 F.Supp. 214, 219 (E.D.Wisc. 1992). *See Jorge v. Hart,* No. 97 Civ. 1119, 1997 WL 531309 *7 (S.D.N.Y. Aug. 28, 1997) (under pre–1996 Second Circuit case law, habeas corpus relief in district courts was limited to matters unrelated to deportation orders).

■ As stated, AEDPA § 440(a) made final orders of deportation not reviewable "by any court," which on its face seems to include the courts of appeals. Some courts have questioned whether, in the aftermath of AEDPA, the Suspension Clause mandates the existence of *some* habeas corpus jurisdiction in the district courts. *See, e.g., Jorge,* 1997 WL 531309 *11 (stating that it is "questionable" whether the Second Circuit would continue to hold that there is no district court jurisdiction to hear challenges to final orders of deportation in view of the elimination of court of appeals review, but finding it unnecessary to decide issue because petition was plainly meritless); *but see Auguste v. Attorney Gen'l,* 118 F.3d 723, 726 (11th Cir. 1997) (Congress can constitutionally remove all judicial review of orders of removal, since regulation of aliens has been committed to the executive and legislative branches alone); *Duldulao v. INS,* 90 F.3d 396, 400 (9th Cir. 1996) (since aliens have no constitutional right to judicial review of deportation orders, § 440(a)'s abolition of jurisdiction does not offend due process).[3]

---

**3.** IIRIRA has to a limited extent restored the availability of judicial review in immigration

matters, but because of IIRIRA's transition provi-

In *Hincapie–Nieto v. INS*, 92 F.3d 27 (2d Cir.1996), however, the Second Circuit addressed this very subject. Finding that AEDPA had eliminated its jurisdiction to hear a petition for review of a final order of deportation, the court said that it had asked the Government at oral argument for its views on whether the abolition of the courts of appeals' jurisdiction to hear petitions for review of deportation orders also precluded whatever other habeas corpus remedies the petitioner might have had. The Government responded that under AEDPA, an alien ordered deported on account of having committed a drug offense "may not challenge his deportation order by petition for a writ of habeas corpus," but that he could "challenge his *detention* by application for habeas corpus . . . ." *Id.* at 30–31. The Government cited 8 U.S.C. §§ 1252(a)(1), 1252(c), and *Bertrand v. Sava*, 684 F.2d 204, 210 (2d Cir.1982), all of which deal with challenges to INS's detention or custody of aliens pending deportation or a determination of deportability.

Commenting on the Government's response, the Second Circuit stated in *Hincapie–Nieto* that "[s]ince the Government acknowledges that at least some avenue for judicial relief remains available, we see no infirmity in the repeal of our prior jurisdiction to entertain Hincapie–Nieto's petition for review of his deportation order." *Id.* at 31. In other words, the court found that Congress could constitutionally remove the courts' habeas corpus jurisdiction over direct challenges to deportation orders, leaving only jurisdiction to hear certain claims relating to matters collateral to deportation orders. The court thus implicitly found that nothing in the Constitution requires the preservation of habeas corpus jurisdiction as a vehicle to review final deportation orders.

Most of the cases relied upon by Marriott are therefore inapposite inasmuch as they are from circuits that had taken a more expansive view of district court jurisdiction prior to 1996. Those courts' holdings that AEDPA and IIRIRA did not *eliminate* § 2241 jurisdiction is therefore meaningless in the context of case law in the Second Circuit, where habeas corpus jurisdiction has "been a dead letter as to deportation orders since 1961," when Congress amended INA to eliminate district court jurisdiction and set in place the regime that existed immediately prior to AEDPA. *Jorge,* 1997 WL 531309 *11. *See Benziane v. United States,* 960 F.Supp. 238, 241–43 (D.Colo.1997) (because district courts in Tenth Circuit were without jurisdiction even before enactment of AEDPA and IIRIRA to hear direct challenges to final orders of deportation, court lacked jurisdiction to consider § 2241 petition challenging deportation); *Ozoanya v. Reno,* 979 F.Supp. 447 (W.D.La. 1997) (noting that under pre–1996 case law, district courts had jurisdiction only to review constitutional claims relating to matters collateral to orders of deportation, but not over claims challenging the validity of deportation orders themselves, and stating that "[t]his court's jurisdiction has not been expanded under AEDPA or IIRIRA regardless of whether an alien is precluded from judicial review" in a court of appeals).[4]

This decision is also consonant with a case from the Southern District of Florida that is factually virtually identical to the instant case. In *Mayers v. Reno,* 977 F.Supp. 1457 (S.D.Fla.1997), the petitioner, who had been a lawful permanent resident of the United States since 1977, pleaded guilty to a drug offense in 1993. The INS commenced deportation proceedings against him later that year. The petitioner filed an application for a § 212(c) waiver in 1994, which was denied

---

sions, that alone does not resolve these issues for purposes of the case at bar.

4. I recognize that there are two district court cases from this circuit holding that district courts have § 2241 jurisdiction to hear challenges to final orders of deportation even after the enactment of AEDPA and IIRIRA. *See Mojica v. Reno,* 970 F.Supp. 130 (S.D.N.Y.1997); *Yesil v. Reno,* 958 F.Supp. 828 (S.D.N.Y.1997). As the court noted in *Jorge,* however, these decisions appear

to conflict with pre–1996 Second Circuit case law, so that "even if Congress did not express clearly in the AEDPA its intention to repeal the habeas corpus jurisdiction conferred by § 2241, that section still would not make habeas corpus jurisdiction on district courts in the Second Circuit. . . ." 1997 WL 531309 *11. I am therefore not persuaded by the reasoning of *Mojica* and *Yesil,* and I decline to follow them.

in 1996 because AEDPA had been enacted in the interim. The petitioner commenced a habeas corpus proceeding in district court, but the court ruled that it lacked jurisdiction, stating that "[b]y removing a clear grant of habeas jurisdiction and replacing it with sweeping language [in AEDPA] that forecloses all judicial review, Congress has plainly expressed its intent to repeal habeas corpus review where the alien is being deported for having committed one of the criminal offenses enumerated in Section 440(a)...." *Id.* at 1460. The court also held that IIRIRA deprives aliens "of all opportunity for judicial review" of deportation orders, and rejected the petitioner's constitutional claims, stating that "[t]he Constitution does not give aliens the right to judicial review of deportation orders." *Id.* at 1461 (quoting *Auguste,* 118 F.3d at 727). Stating that "[n]o minimum amount of judicial oversight over the deportation of aliens seems to be constitutionally required ...," the court concluded that "aliens are not constitutionally guaranteed the right to habeas corpus as a vehicle for challenging orders of deportation." 977 F.Supp. at 1461.

I agree with this reasoning. "[T]he Supreme Court never has interpreted due process in deportation proceedings to require judicial review of BIA orders...." *Chow v. INS,* 113 F.3d 659, 668 (7th Cir.1997). The prohibition of such review by AEDPA and IIRIRA is therefore not unconstitutional. Moreover, the unmistakable intent of both acts was to *narrow* the availability of judicial review of INS decisions, so it is patently untenable for Marriott to assert a right to review now that did not exist in this circuit prior to the enactment of these statutes.

### CONCLUSION

Petitioner's petition for a writ of habeas corpus is dismissed for lack of subject matter jurisdiction.

Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed.R.App.P. 22(b), this court denies a certificate of probable cause. Finally, because it appears that any appeal would not be taken in good faith, leave to appeal *in forma pauperis* will be denied.

IT IS SO ORDERED.