PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/20/99
THOMAS K. KAHN
CLERK

_____

No. 97-5537

_____

D. C. Docket No. 97-2443-CV-FAM

TREVOR MAYERS,

Petitioner-Appellant,

versus

UNITED STATES DEPARTMENT OF IMMIGRATION
AND NATURALIZATION SERVICE; ATTORNEY
GENERAL, Janet Reno, et al.,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

----------------------------------------------------------------

_____

No. 98-8185

_____

D. C. Docket No. 1:97-CV-3361-TWT

EFRAIN GUTIERREZ-MARTINEZ,

Petitioner-Appellant,

versus

JANET RENO, Attorney General of the United States;
DORIS MEISSNER, Commissioner of Immigration and
Naturalization, et al.,

Respondent-Appellees.

----

Appeal from the United States District Court
for the Northern District of Georgia

----

**(May 20, 1999)**

Before BIRCH and HATCHETT, Circuit Judges, and KEITH*, Senior Circuit Judge.**

BIRCH, Circuit Judge:

Efrain Gutierrez-Martinez ("Gutierrez-Martinez") and Trevor Mayers

("Mayers") appeal the orders of the district courts denying their petitions for

habeas corpus, in which they sought review of their claim that section 440(d) of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") should not

apply to their pending applications for waiver of deportation.

----

*Honorable Damon J. Keith, Senior U.S. Circuit Judge for the Sixth Circuit, sitting
by designation.
**This decision is rendered by a quorum, due to the retirement of then-Chief Judge
Hatchett on May 14, 1999.  28 U.S.C. § 46(d).

## I.  BACKGROUND

We must consider, as an initial matter, the immigration scheme that provides the controlling law for the habeas corpus petitions of Gutierrez-Martinez and Mayers.  In 1996, within a span of five months, Congress passed two separate pieces of legislation affecting the judicial review process for certain aliens.  The more recent legislation further divided this group of aliens into those who would fall under transitional rules and those who would be considered under the permanent judicial review procedures outlined in the new legislation.  For the sake of clarity, we provide below a brief overview of the statutory schemes that are relevant to this action.

## A.  Reform of Immigration Laws

### 1.  AEDPA

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Portions of AEDPA amended the Immigration and Naturalization Act ("INA"), Pub. L. No. 87-301, 75 Stat. 651 (1961).  Prior to the enactment of AEDPA, judicial review of deportation orders generally proceeded by a petition for review filed in the court of appeals.  See 8 U.S.C.A. § 1105a(a)(2) (West 1995).  In addition, INA § 106(a)(10), codified at 8 U.S.C.A. § 1105a(a)(10) (West 1995), also provided for

review of an order of deportation by habeas corpus. Finally, aliens could challenge INS detention or deportation proceedings through a petition for habeas corpus review pursuant to 28 U.S.C. § 2241. See, e.g., Orozco v. INS, 911 F.2d 539, 541 (11th Cir. 1990). AEDPA § 401(e)[1], a non-codified provision, eliminated the earlier INA § 106(a)(10) and under AEDPA § 440(a) substituted the following language:

> [A]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense [as set forth in the INA] shall not be subject to review by any court.

AEDPA § 440(a), codified at 8 U.S.C.A. § 1105a(a)(10) (West Supp. 1998). AEDPA § 440(a) also eliminated immediate review in the court of appeals for

---

[1]AEDPA § 401(e) states
(e) ELIMINATION OF CUSTODY REVIEW BY HABEAS CORPUS. – Section 106(a) of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)) is amended –
* * * * * *
(3) by striking paragraph (10).
INA § 106(a)(10) had provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C.A. § 1105a(a)(10) (West 1995).

some categories of deportation cases. See Boston-Bollers v. INS, 106 F.3d 352, 355 (11th Cir. 1997).[2]

Under the law in effect prior to the enactment of AEDPA, certain aliens, otherwise determined to be deportable, were entitled to apply for a waiver of deportation under INA § 212(c). The granting of a waiver was a discretionary act of the Attorney General, or her representatives, that would allow the alien to remain in the United States. The alien presented his application to the Immigration Judge ("IJ"), who had discretion to waive the deportation of an alien based upon such factors as time spent and family ties in the United States and restitution for criminal activity. Section 440(d) of AEDPA greatly expanded the category of criminal convictions that would render an alien, including petitioners here, ineligible to apply for relief under INA § 212(c). See AEDPA § 440(d), codified at 8 U.S.C.A. § 1182(c) (West Supp. 1997).[3]

---

[2]In Boston-Bollers, we held that § 440(a) divested the courts of appeals of initial jurisdiction to consider petitions for review brought by aliens deportable on the basis of one of the specified criminal offenses, but we specifically did not address whether the district court retained habeas corpus jurisdiction. 106 F.3d at 354 n.1.

[3]8 U.S.C.A. § 1182(c)(West Supp. 1997) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 304(b), and replaced by new INA § 240A, codified at 8 U.S.C.A. § 1229b (West 1999). INA § 240A consolidates "suspension of deportation" relief with provisions of the old INA § 212(c) to create a new form of relief called "cancellation of removal." "Cancellation of removal" relief is available for aliens whose criminal convictions do not qualify as "aggravated felonies." See IIRIRA § 304(a), codified at 8 U.S.C.A. § 1229b (West 1999). These permanent provisions of IIRIRA apply only to those aliens ordered deported after April 1, 1997, the effective date for IIRIRA, and are not applicable

2.    IIRIRA

Several months after the enactment of AEDPA, the judicial review process

for deportation orders once again was restructured when Congress enacted the

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),

Pub. L. No. 104-208, Div. C., 110 Stat. 3009-546, on September 30, 1996.  Section

306 of IIRIRA repealed the judicial review process set out in INA § 106, as

amended by AEDPA § 440(a), and replaced it with a new structure for judicial

review in the new INA § 242, codified at 8 U.S.C.A. § 1252 (West 1999).[4]

Under the transitional rules provided for in IIRIRA, judicial review for most

aliens is to take place without regard to IIRIRA's amendments.  See IIRIRA §

309(c)(1), as amended by Act of Oct. 11, 1997, § 2, Pub. L. No. 104-302, 110 Stat.

3656, 3657, set out as a note following 8 U.S.C.A. § 1101 (West 1999).[5]  IIRIRA's

here.

[4]AEDPA § 440(a) governs deportation orders that became final before October 31, 1996. Orders that became final after this date, but before April 1, 1997, are governed by IIRIRA's transitional rules (set forth in § 309(c) and not codified in the United States Code).  All proceedings that commence after April 1, 1997, are governed by IIRIRA's permanent rules, set forth in new INA § 242 and codified at 8 U.S.C.A. § 1252 (West 1999).  Because the deportation proceedings for both petitioners in the present case commenced before April 1, 1997, the effective date of IIRIRA, and became final after October 30, 1996, **IIRIRA's transitional rules apply to both petitioners**.  See IIRIRA, § 309(c), set out as a note following 8 U.S.C.A. § 1101 (West 1999).

[5]IIRIRA § 309(c)(1) provides:
        Subject to the succeeding provision of this subsection, in the case of an alien who is in exclusion or deportation proceedings [before April 1, 1997] --
                A.      the amendments made by this subtitle shall not apply, and

6

transitional rule § 309(c)(4)(G), however, provides that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed" one of the enumerated crimes. This section applies to both Gutierrez-Martinez and Mayers.

The permanent rules for judicial review of aliens' claims are set forth in IIRIRA § 306. IIRIRA's permanent rules repeal the judicial review provisions of 8 U.S.C.A. § 1105a and create new, more narrowly-drawn rules regarding judicial review, located in the new INA § 242, codified at 8 U.S.C.A. § 1252 (West 1999). Because petitioners in the present case fall under the transitional rules of IIRIRA, only one provision of the permanent rules potentially impacts the instant case. IIRIRA § 306(a) adds INA § 242(g):

> EXCLUSIVE JURISDICTION. – Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Chapter.

8 U.S.C.A. § 1252(g) (West 1999).

The special effective date for the new INA § 242(g) directs that it shall apply "without limitation to claims arising from all past, pending, or future exclusion,

---

B.    the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

7

deportation, or removal proceedings under [this] Act." IIRIRA § 306(c), as amended by Act of Oct. 11, 1997, § 2, Pub. L. No. 104-302, 110 Stat. 3656, 3657, set out as a note following 8 U.S.C.A. § 1252 (West 1999). The special effective date creates a statutory inconsistency whereby § 309(c) is to apply to defined transitional cases, but § 306(a), through the new INA § 242, is to apply to all cases, past, pending, or future, which would seem to include transitional cases. The question we face here is whether the provisions of AEDPA and IIRIRA preclude any exercise of habeas corpus jurisdiction over claims, constitutional or otherwise, of Gutierrez-Martinez and Mayers.

## B. Petitioners

### 1. Gutierrez-Martinez

Gutierrez-Martinez is a citizen of Colombia who entered the United States as a lawful permanent resident on January 30, 1986. On September 29, 1988, Gutierrez-Martinez pled guilty to and was convicted of one count of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846. On October 15, 1995, the Immigration and Naturalization Service ("INS") ordered Gutierrez-Martinez to show cause why he should not be deported on the basis of his conviction for possession of a controlled substance in violation of INA § 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i) (1994), (current version codified at 8

U.S.C.A. § 1227(a)(2)(B)(i) (West 1999)). On March 26, 1996, the IJ found Gutierrez-Martinez deportable because of his status as a convicted drug offender, but granted him additional time to file an application for waiver of deportation under the earlier INA § 212(c).

On April 26, 1996, Gutierrez-Martinez filed his application for a § 212(c) waiver. At a hearing on May 14, 1996, the IJ held that under the new provisions of the AEDPA, which became effective two days before Gutierrez-Martinez filed his waiver application, Gutierrez-Martinez was statutorily ineligible for § 212(c) relief. The Board of Immigration Appeals ("BIA") affirmed this holding and dismissed Gutierrez-Martinez' appeal. Gutierrez-Martinez filed a petition for review of the BIA's order with this court. We dismissed that petition for lack of jurisdiction, citing IIRIRA §§ 309(c)(4)(E) & (G).[6] On November 6, 1997, Gutierrez-Martinez then filed a petition for habeas corpus review under 28 U.S.C. § 2241 in the district court.

---

[6] Another panel of this court dismissed Gutierrez-Martinez' petition for review in an unpublished, two sentence order. Subsequent to that dismissal, we held in Lettman v. Reno, 168 F.3d 463 (11th Cir. 1999) (per curiam), that the court of appeals has jurisdiction to determine whether an alien is deportable under § 309 (c)(4)(G). As explained in Lettman, this determination involves considering two questions: whether the petitioner is (1) an alien and (2) deportable by reason of a criminal offense listed in the statute. Id. at 465. If these questions are answered in the affirmative, then the court loses its jurisdiction pursuant to § 309(c)(4)(G). Lettman did not address whether this avenue of review would encompass any substantial claims. We need not reach this issue because it is clear that the claims of Gutierrez-Martinez were not reviewed under his petition for review.

9

The district court found that habeas corpus jurisdiction under § 2241 survived the enactment of AEDPA and IIRIRA. The court held, however, that "habeas relief is available only if the Petitioner can identify a grave constitutional error or a fundamental miscarriage of justice in his deportation proceedings." R1-5-6. The district court further determined, however, that retroactive application of AEDPA § 440(d) to eliminate Gutierrez-Martinez' eligibility for the § 212(c) waiver process was not a constitutional error and, therefore, could not be reviewed on the limited scope of habeas corpus review available under the new immigration regime. The district court also rejected Gutierrez-Martinez' claim that AEDPA § 440(d) violated the equal protection guarantee of the Due Process Clause of the Fifth Amendment because it distinguished between deportable and excludable aliens. As a result, the district court denied Gutierrez-Martinez' petition for habeas corpus review. Gutierrez-Martinez now appeals that decision.

2.    Mayers

Mayers is a citizen of Barbados admitted to the United States as a lawful permanent resident on July 19, 1977. On January 20, 1993, Mayers pled guilty to and was convicted of possession with intent to distribute more than fifty kilograms of marijuana in violation of 21 U.S.C. § 841. On November 15, 1993, the INS commenced deportation proceedings against Mayers based on his criminal

10

conviction, pursuant to INA § 241(a)(2)(A)(iii), 8 U.S.C.A. § 1251(a)(2)(A)(iii) (1994), (current version codified at 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 1999)). On July 7, 1994, Mayers filed for a waiver of deportation under INA § 212(c). At the first hearing to consider the waiver application, the IJ indicated that she was inclined to grant a § 212(c) waiver. A second hearing on the waiver was not held until April 30, 1996, six days after President Clinton signed the AEDPA into law. The IJ granted Mayers' § 212(c) waiver petition, and the BIA affirmed this decision. On March 17, 1997, however, the BIA reconsidered its decision in light of a new opinion by the Attorney General indicating that AEDPA § 440(d) applies to pending deportation cases. As a result, the BIA found Mayers to be statutorily ineligible for relief under § 212(c) and ordered Mayers deported. Mayers filed a petition for habeas corpus review in the district court on July 31, 1997, seeking review of the final deportation order and challenging on due process and equal protection grounds the application of AEDPA § 440(d) to his § 212(c) waiver request.

In contrast to Gutierrez-Martinez' petition, the district court reviewing Mayers' habeas corpus petition found it lacked subject-matter jurisdiction because "Congress has eliminated all avenues of judicial review of criminal orders of deportation, including the writ of habeas corpus" in the new immigration regime.

Mayers v. Reno, 977 F. Supp. 1457, 1461 (S. D. Fla. 1997). The district court held that this elimination of review suffered no constitutional infirmities because "[n]o judicial review [of deportation orders] is guaranteed by the Constitution." Id. (quoting Carlson v. Landon, 342 U.S. 524, 537, 72 S. Ct. 525, 533, 96 L.Ed. 547 (1952)). In the alternative, the district court found that even if there were still some form of habeas corpus review of constitutional claims, Mayers' claim that AEDPA § 440(d) should not apply retroactively to his deportation proceedings did not rise to the level of "grave constitutional error or fundamental miscarriage of justice." Id. at 1462. The district court concluded, therefore, that it lacked jurisdiction to review Mayers' claim.

Upon a motion by Mayers, these cases were consolidated for appeal on September 9, 1998. We therefore refer to Mayers and Gutierrez-Martinez collectively as "petitioners" when discussing common claims. Petitioners argue that under the new immigration schemes, the district court retains habeas corpus jurisdiction under 28 U.S.C. § 2241. Petitioners further argue that AEDPA § 440(d), which makes certain aliens ineligible for relief under the old INA § 212(c) waiver application process, should not apply retroactively to their deportation proceedings. We review de novo issues of subject-matter jurisdiction. See Jairath v. Dyer, 154 F.3d 1280, 1281-82 (11th Cir. 1998). We also review de novo the

12

purely legal question of whether a statute's provisions apply retroactively. <u>See</u>

<u>United States v. Olin Corp.</u>, 107 F.3d 1506, 1509 (11th Cir. 1997).

## II.  JURISDICTION

### A.  Habeas Corpus Jurisdiction

The petitioners argue that AEDPA and IIRIRA did not repeal habeas corpus jurisdiction in the district court under 28 U.S.C. § 2241 to review deportation orders.  In the alternative, petitioners argue that the Suspension Clause of the Constitution entitles them to judicial review of their constitutional and statutory claims.  On the merits, petitioners contend that AEDPA § 440(d), which restricts the old INA's § 212(c) waiver application process, should not be applied retroactively.  Finally, petitioners argue that § 440(d) violates equal protection because deportable criminal aliens inside the country are not eligible for § 212(c) waivers, while identically situated aliens seeking reentry are eligible to request a waiver.

The government argues that by enacting AEDPA § 401(e), Congress expressly repealed the grant of habeas corpus jurisdiction to district courts found in the former INA § 106(a)(10).  Furthermore, the government contends, the new INA § 242 places "exclusive jurisdiction" over deportation matters in the courts of appeals.  The government asserts that there is review available by means of a

13

petition for review in the court of appeals for "substantial constitutional challenges" to the final deportation orders of aliens. The government contends, however, that petitioners' claims do not rise to this level. The government recognizes that under our decision in Boston-Bollers, aliens with certain criminal convictions may not obtain judicial review of their deportation orders in the court of appeals and, therefore, its interpretation of the immigration statutes would leave petitioners here with no judicial review outside the administrative agency process.[7]

1.      Exclusive Jurisdiction under INA § 242(g).

The Supreme Court recently has addressed the scope of the new INA § 242(g) in Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. ___, 119 S. Ct. 936, ___ L.Ed.2d. ___ (1999) ("AADC"). In AADC, the Court

---

[7]The government makes several attempts throughout its argument to diminish the severity of the petitioners' position here. First, the government asserts that whatever kind of review available to petitioners must be done in the court of appeals. The government then contends that petitioners would be able to raise at least "substantial constitutional challenges" to their deportation proceedings at the court of appeals. Gutierrez-Martinez did file a petition for review. As previously mentioned, his petition was dismissed by this court for lack of jurisdiction under IIRIRA § 309(c)(4)(G). As we discussed in note 6, under Lettman, the court of appeals now has jurisdiction to determine whether an alien is deportable. Lettman did not consider whether substantial claims affecting the deportability of an alien can be addressed under § 309(c)(4)(G). As the district court noted, "a conclusion that the Petitioner must seek whatever relief is available in the court of appeals is somewhat of a red herring." Mayers, 977 F. Supp. at 1460 (footnote omitted).

In the alternative, the government next argues that should we exercise habeas corpus jurisdiction, review must be limited to "fundamental miscarriage[s] of justice." This standard is extracted from cases involving successive petitions for habeas corpus, implicating abuse of the writ. See, e.g., Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L.Ed.2d 203 (1993). We decline to apply that standard here to a first-time habeas corpus petitioner in detention as a result of an executive, rather than judicial, process.

14

recognized an "interpretive anomaly" with respect to the tension between IIRIRA's transitional rules and the new INA § 242(g). The Court described the "horns of this dilemma" by noting:

> If the jurisdiction-excluding provision of § 1252(g) [INA § 242(g)] eliminates other sources of jurisdiction in all deportation-related cases, and if the phrase in § 1252(g) "[e]xcept as provided in this section" incorporates (as one would suppose) all the other jurisdiction-related provisions of § 1252, then § 309(c)(1) [IIRIRA's transitional rules] would be rendered a virtual nullity. To say that there is no jurisdiction in pending INS cases "except as" § 1252 provides jurisdiction is simply to say that § 1252's jurisdictional limitations apply to pending cases as well as future cases – which seems hardly what § 309(c)(1) is about. If, on the other hand, the phrase "[e]xcept as provided in this section" were (somehow) interpreted not to incorporate the other jurisdictional provisions of § 1252 – if § 1252(g) stood alone, so to speak – judicial review would be foreclosed for all deportation claims in all pending deportation cases, even after entry of a final order.

AADC, 525 U.S. at ___, 119 S. Ct. at 941 (emphasis in original). The Court declared this "seeming anomaly" to be a "mirage" by narrowing the universe to which § 1252(g) applies to "three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Id. at 943 (emphasis in original).[8] Section 1252(g), then,

---

[8]The Court then provided examples of actions that are part of the deportation process, but are not included in § 1252(g), such as "the decision to open an investigation, to surveil the suspected violator, to reschedule a deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." AADC, 525 U.S. at ___, 119 S. Ct. at 943. The Court noted this section was designed to insulate from judicial review certain "no deferred action" discretionary determinations of the Attorney General

"performs the function of categorically excluding from non-final-order judicial review – even as to transitional cases otherwise governed by § 1105a . . . – certain specific decisions and actions of the INS." Id. Section 1252(g), as applied to transitional rule cases, thus, reflects the intention of Congress to eliminate review of certain interim, discretionary decisions the INS may make. As a result, we hold that in transitional cases, review of final orders falls outside of § 1252(g)'s exclusive jurisdiction provision.[9]

2.    Habeas Corpus Jurisdiction After the Enactment of AEDPA.

Since the exclusive jurisdiction provision of § 1252(g) does not apply to final orders of deportation for aliens falling under the transitional rules of IIRIRA, we look next to whether habeas corpus jurisdiction survives the enactment of AEDPA, as modified by the transitional rules of IIRIRA.

As we have noted, a panel of this court held in Richardson that there is no habeas corpus jurisdiction under the permanent rules of IIRIRA. See Richardson,

___

that "developed without express statutory authorization." Id. at ___, 119 S. Ct. at 944. Here, by contrast, we review a final order of deportation concerning petitioners' ability to utilize old INA § 212(c), a statutorily described waiver process.

[9]In Richardson v. Reno, 162 F.3d 1338 (11th Cir. 1998), a panel of this court addressed the scope of § 1252(g). Id. at 1356-59. The Richardson court was without the benefit of the Supreme Court's explication on this matter in AADC. Moreover, the petitioner in Richardson was not challenging a final order of deportation and fell under IIRIRA's permanent rules. We rely, therefore, on the Supreme Court's analysis in AADC to inform our conclusions here. The Supreme Court vacated and remanded Richardson for further consideration in light of the Court's decision in AADC. See 67 U.S.L.W. 3561 (June 1, 1999) (No. 98-1367).

16

162 F.3d at 1359.  The petitioner in <u>Richardson</u> was attempting to bring a habeas corpus petition challenging the constitutionality of denial of bond pending the outcome of a removal hearing. In contrast, the petitioners in the present case are seeking habeas corpus review of a final order of deportation.  For these petitioners, there are no other opportunities for judicial review.  Furthermore, Gutierrez-Martinez and Mayers fall under IIRIRA's transitional rules, which, by definition, serve as a bridge between the old and new regimes.  The transitional statute states the general proposition that the new rules do not apply to aliens already in proceedings as of April 1, 1997.  <u>See</u> IIRIRA § 309(c)(1), set out as note following 8 U.S.C.A. § 1101 (West 1999).  The only exception to the general rule for petitioners in the present case is IIRIRA § 309(c)(4)(G) which places certain limitations on a criminal alien's "appeal."  The term "appeal" refers to a petition for review in the court of appeals and not a petition for habeas corpus review.  <u>See</u> <u>Goncalves</u>, 144 F.3d 110, 117 (1st Cir. 1998).[10]

---

[10]We note that the Seventh Circuit has applied the reasoning of <u>Richardson</u> to a petitioner seeking habeas review of his challenge to the retroactive application of AEDPA § 440(a).  <u>See</u> <u>LaGuerre v. Reno</u>, 164 F.3d 1035 (7th Cir. 1998).  <u>LaGuerre</u> does not discuss IIRIRA, but rather focuses on the application of AEDPA §§ 401(e) and 440(a) to the old INA § 106(a)(10).

In <u>LaGuerre</u>, the court found that there would be no difficulty under the Suspension Clause of the Constitution were habeas corpus jurisdiction to be eliminated as a procedure for challenging final orders of deportation when it is clear the immigration authorities had jurisdiction in the case, an issue which could be assured by extremely narrow court of appeals review.  164 F.3d at 1040.  The court notes that to hold otherwise would create an "irrational ratchet" where habeas corpus could be enlarged, but once enlarged could not be returned to its original position.  <u>Id</u>. at 1038.  <u>LaGuerre</u> found that the purpose of the 1996 immigration

Since the permanent rules of IIRIRA do not apply in the present case, and petitioners here were unable to obtain any review in the court of appeals, we must now consider whether the INA, as amended by AEDPA and prior to the effective date of the permanent rules of IIRIRA, allows for habeas corpus jurisdiction under these circumstances. As we previously have noted:

> [p]rior to 1996, INA § 106 set out the judicial-review scheme for deportation and exclusion orders. INA § 106(a)(2) provided for petition of review in the court of appeals. In addition, INA § 106(a)(10) allowed aliens in custody to seek habeas corpus review of final deportation orders under the INA. Aliens also could rely on 28 U.S.C. § 2241 habeas corpus to challenge INS detention or deportation proceedings.

Richardson, 162 F.3d at 1353 (footnotes omitted). AEDPA amended the INA to eliminate habeas corpus review under § 106(a)(10). See § 401(e) (a non-codified provision of AEDPA that eliminated the earlier form of INA § 106(a)(10)) and AEDPA § 440(a) (restricting judicial review for criminal aliens) (codified at 8 U.S.C.A. § 1105a(a)(10) (West Supp. 1998)). AEDPA did not, however,

---

amendments was "to curtail and speed up judicial review of deportation orders directed against disfavored classes of criminals, such as drug offenders." Id. at 1039. Finally, the court concluded that "for the class of aliens encompassed by section 440(a), judicial review by means of habeas corpus did not survive the enactment of that section." Id. at 1040.

At the same time, however, the court stepped back from its position by noting that, with respect to whether § 440(d) should apply retroactively, it "seems unlikely that Congress would have wanted the [BIA] to have the final word on so pure and fundamental a question of law as to when the statute went into effect. So maybe the door to judicial review has been left a little more ajar than we have suggested." Id. at 1041. It would seem then, that the LaGuerre court, with a measure of ambiguity, concedes that some sort of judicial review is available.

18

specifically discuss 28 U.S.C. § 2241.  <u>Cf</u>. <u>Richardson</u>, 162 F.3d at 1358 (AEDPA

eliminated "the specific habeas review granted under former INA § 106(a)(10)");

<u>Auguste v. Reno</u>, 152 F.3d 1325, 1329 n.9 (11th Cir. 1998) ("AEDPA § 401(e)

deprives this court of jurisdiction to hear a petition for habeas corpus under INA §

106.").  Neither <u>Richardson</u> nor <u>Auguste</u> discusses the availability of habeas corpus

under 28 U.S.C. § 2241 after AEDPA.  We must decide, then, whether in

immigration cases, habeas corpus jurisdiction under § 2241 implicitly was

eliminated by Congress when it enacted AEDPA § 401(e).[11]

Other circuits have held that habeas corpus jurisdiction under 28 U.S.C. §

2241 survives the enactment of AEDPA.  In <u>Goncalves v. Reno</u>, 144 F.3d 110 (1st

Cir. 1998), the First Circuit held that Congress could not repeal habeas corpus

jurisdiction under 28 U.S.C. § 2241 by implication, but only by express command.

<u>See</u> 144 F.3d at 119 (citing <u>Felker v. Turpin</u>, 518 U.S. 651, 116 S. Ct. 2333, 135

L.Ed.2d 827 (1996)).  The court then determined that throughout the history of

immigration statutes, both broad and narrow, habeas corpus review remained

---

[11]Because the petitioner in <u>Richardson</u> came under the permanent rules of IIRIRA, the panel did not discuss in detail the effect of AEDPA § 440(a) on habeas corpus jurisdiction in the district courts.  <u>Richardson</u>, rather, applied the more narrow judicial review scheme of the new INA § 242.  Since we hold in the instant case that the new INA §§ 242(a)-(f) do not apply to transitional cases that seek review of a final order of deportation and that the exclusive jurisdiction provision of § 242(g) applies only to interim administrative decisions of the INS, we proceed to an independent review of the effect of AEDPA § 440(a) on habeas corpus jurisdiction under 28 U.S.C. § 2241.

available to aliens. Id. at 120 (citing Foti v. INS, 375 U.S. 217, 231, 84 S. Ct. 306, 315, 11 L.Ed.2d 281 (1963) (the vesting of jurisdiction to review orders under the APA exclusively in the court of appeals "in no way impairs the . . . availability of habeas corpus relief.")). The Goncalves court noted that while AEDPA § 401(e) explicitly repealed old INA § 106(a)(10), which had provided a form of habeas corpus jurisdiction, AEDPA did not expressly amend 28 U.S.C. § 2241. Old INA § 106(a)(10), the court continued, assured aliens of a "supplemental collateral remedy," but did not apply to aliens "who could not obtain review under the APA judicial review provisions." Id. at 121.[12]

We are persuaded by the reasoning in Goncalves, holding that habeas corpus jurisdiction under 28 U.S.C. § 2241 survived the enactment of AEDPA.[13] In

---

[12]The court further noted that
> Aliens without other recourse had traditionally been able to obtain review by habeas corpus, even in the face of statutory language precluding all other review. See Heikkila v. Barber, 345 U.S. 229, 233-35, 73 S. Ct. 603, 605-06, 97 L.Ed. 972 (1953). In enacting AEDPA, Congress was concerned about abuses of duplicative judicial remedies, and the elimination of old INA § 106(a)(10) served that congressional purpose. It does not follow from the repeal of this provision of the INA that § 2241 habeas jurisdiction has been repealed altogether in immigration cases. Had Congress wished to eliminate any possible habeas jurisdiction under 28 U.S.C. § 2241, it could easily have inserted an explicit reference, but it did not.

144 F.3d at 121 (footnote omitted).

[13]Five other circuits that have addressed similar issues have reached the same, or analogous, conclusions as that reached by the First Circuit in Goncalves. See, e.g., Henderson v. INS, 157 F.3d 106 (2d Cir. 1998) (proper mechanism for judicial review of deportation against criminal aliens was through habeas corpus petition in district court); Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999) (same); and Magana-Pizano v. INS, 152 F.3d 1213 (9th Cir.), amended by,

20

Felker v. Turpin, 518 U.S. 651, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996), the

Supreme Court held that when Congress intends to repeal or restrict habeas

jurisdiction under § 2241, it generally must do so explicitly. See id. at 660, 116 S.

Ct. at 2238-39. AEDPA does not explicitly eliminate habeas corpus jurisdiction

under § 2241, although Congress was explicit in eliminating habeas review under

old INA § 106(a)(10). See Goncalves, 144 F.3d at 121. Generally, repeal of

jurisdictional provisions by implication is disfavored. See Felker, 518 U.S. at 659-

63, 116 S. Ct. at 2338-39.[14] In sum, while AEDPA eliminated the habeas corpus

---

159 F.3d 1217 (9th Cir. 1998) (where petitioner has no other means of judicial review, habeas corpus jurisdiction must be available to avoid constitutional infirmities). The Supreme Court denied certiorari in Henderson and Goncalves. See ___ U.S. ___, 119 S. Ct. 1140, 1141 (1999). The Court vacated and remanded Magana-Pizano for further consideration in light of the Court's decision in AADC. See id. at ___, 119 S. Ct. at 1137.

[14]Furthermore, it is not unusual for courts to distinguish between a statute's directive that there should be no "judicial review" and the separate notion of habeas corpus. See Heikkila, 345 U.S. at 236, 73 S. Ct. at 607. Prior immigration decisions, even during restrictive regimes, have noted that some decisions could not be challenged "on review", but could be challenged through a narrower habeas window. See, e.g., Nishimura Ekiu v. United States, 142 U.S. 651, 663, 12 S. Ct. 336, 340, 35 L.Ed. 1146 (1892) (exclusion decision subject to habeas review, but cannot be "impeached or reviewed"); Chew Heong v. United States, 112 U.S. 536, 559, 5 S. Ct. 255, 266-67, 28 L.Ed. 770 (1884) (considering, on habeas corpus review, the ability of Chinese laborers to reenter the United States where previously vested right to reenter without a certificate would be adversely affected by giving statute retroactive effect).

Although the government also argues that the 1961 Immigration Act previously eliminated all habeas review over deportation orders, we have held to the contrary. See United States ex rel. Marcello v. District Director, 634 F.2d 964, 971 (5th Cir. 1981). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. See also Orozco, 911 F.2d at 541 ("Challenges to deportation proceedings are cognizable under 28 U.S.C. § 2241.").

jurisdiction available under the old INA § 106(a)(10), it did not explicitly repeal the habeas corpus jurisdiction traditionally available to aliens under 28 U.S.C. § 2241.

We further note that the petitioners' challenge to the Attorney General's retroactive application of AEDPA § 440(d) is a matter appropriate for the court, rather than the BIA or the Attorney General, to decide. The Supreme Court has noted that the "Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." Landgraf v. USI Film Prods., 511 U.S. 244, 266, 114 S. Ct. 1483, 1497, 128 L.Ed.2d 229 (1994) (citation omitted). Furthermore, in immigration cases, the Supreme Court has held that a review of statutory questions implicates due process of law. See, e.g., Brownell v. We Shung, 352 U.S. 180, 182 n.1, 77 S. Ct. 252, 255 n.1, 1 L.Ed.2d 225 (1956) ("due process" includes "conformity to statutory grounds"); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265, 268, 74 S. Ct. 499, 502, 504, 98 L.Ed. 681 (1954) (using habeas to ensure the "due process required by the regulations" because the "crucial question is whether the alleged conduct of the Attorney

22

General deprived petitioner of any of the rights guaranteed him by the statute or by the regulation issued pursuant thereto.").

The Supreme Court also permitted habeas corpus review of issues similar to petitioners' here concerning the <u>authority</u> to grant discretionary relief.  <u>See</u>, <u>e.g.</u>, <u>United States ex rel. Hintopoulos v. Shaughnessy</u>, 353 U.S. 72, 78, 77 S. Ct. 618, 621, 1L.Ed.2d 652 (1957) (reviewing by habeas corpus and finding no abuse of discretion in denial of suspension of deportation); <u>Accardi</u>, 347 U.S. at 268, 74 S. Ct. at 504 (reviewing by habeas corpus and finding failure to exercise discretion in accordance with regulations concerning the suspension of deportation).[15]  The Supreme Court permitted these statutory reviews through the mechanism of habeas corpus during the period when, according to <u>Heikkila v. Barber</u>, judicial review in immigration cases was limited to the minimum required by the Constitution.  <u>See</u> 345 U.S. at 234-35, 73 S. Ct. at 605-06.  Finally, the "pure issue of law, of whether Congress intended to make a particular provision of a statute retroactive, is of a

---

[15]The government attempts to muddy the waters by arguing that petitioners cannot seek review of a discretionary decision by the BIA.  To the contrary, petitioners are not seeking to review a decision to grant or deny a § 212(c) waiver, but rather are seeking  to review a decision concerning the ability to apply for such waiver.  <u>See</u> <u>Accardi</u>, 347 U.S. at 268, 74 S. Ct. at 503-04 ("It is important to emphasize that we are not here reviewing and reversing the <u>manner</u> in which discretion was exercised.  Rather we object to the [BIA's] alleged <u>failure to exercise</u> its own discretion contrary to existing valid regulations.") (emphasis in original); <u>Goncalves</u>, 144 F.3d at 125 ("Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant relief.").

type traditionally resolved by the courts." Goncalves, 144 F.3d at 113. See also

LaGuerre, 164 F.3d at 1041 (it "seems unlikely that Congress would have wanted

the [BIA] to have the final word on so pure and fundamental a question of law as

to when [§ 440(d)] went into effect."). As a result, we exercise habeas corpus over

the claims of petitioners here on the question of whether AEDPA § 440(d) applies

to pending cases to deprive petitioners of the ability to apply for a waiver of

deportation under § 212(c).

## B.    Summary

We hold that for aliens whose petitions fall within the purview of IIRIRA's

transitional rules and who seek review of a final order of deportation, AEDPA's

elimination of § 106(a)(10)'s grant of habeas jurisdiction does not extend to

eliminate the federal habeas jurisdiction previously available under 28 U.S.C. §

2241.[16] It is important to emphasize, as did the Henderson court, that in exercising

habeas corpus jurisdiction in this case, we do not decide whether every statutory

claim raised by an alien is cognizable on habeas. See 157 F.3d at 122. The

---

[16]We note, again, the distinction with our holding in Richardson, which based its analysis of the availability of habeas corpus jurisdiction on IIRIRA § 242(g), a provision that does not apply to the petitioners here who seek review of a final order of deportation under IIRIRA's transitional rules. When considering final removal orders, Richardson specifically left open the issue of whether the Constitution would require judicial review of "statutory or legal errors other than to the extent necessary to determine whether a jurisdictional bar to judicial review exists." 162 F.3d at 1378 n.182.

petitioners' claims in the present case, however, affect the aliens' substantial rights and are of the nature that courts have enforced through judicial review even when Congress has attempted to limit the courts' jurisdiction in immigration matters as far as constitutionally permitted. See id. We further note again that our exercise of habeas corpus jurisdiction in this case is informed by the facts that Gutierrez-Martinez and Mayers were unable to obtain any judicial review and are challenging final orders of deportation, not interim discretionary decisions by the INS.[17]

### III. MERITS

### A. Retroactive Application of AEDPA Section 440(d)

As previously stated, AEDPA § 440(d) made certain criminal aliens, including Gutierrez-Martinez and Mayers, ineligible to apply for an old INA § 212(c) waiver of deportation. In the Matter of Soriano, Int. Dec. 3289 (A.G. Feb. 21, 1997) (beginning at *16), the Attorney General ruled that AEDPA § 440(d) applies to pending § 212(c) application cases. The BIA affirmed the IJ's decision

---

[17]We arrive at this decision only after much consideration, noting that whether review of such claims as presented here resides in a habeas petition or a petition for review presents difficult issues. See Henderson, 157 F.3d at 119 n.9 ("Neither approach is without problems in terms of the text and legislative history.").

We decline to make a broad statement about the scope of habeas corpus relief available to criminal aliens in IIRIRA transitional cases. Rather, we hold only that in the circumstances presented in the case where petitioners' claims are ones affecting substantive rights that traditionally have been reviewed by courts even in the most restrictive immigration schemes, and where petitioners have no other avenue for relief, we exercise habeas corpus jurisdiction in these narrow circumstances and leave to another day a determination of whether habeas corpus jurisdiction would be available in other circumstances. See Henderson, 157 F.3d at 122.

that under AEDPA, Gutierrez-Martinez was statutorily ineligible to apply for a §

212(c) waiver. The BIA granted Mayers a § 212(c) waiver, but then reconsidered

its decision in light of the Attorney General's determination in Soriano that §

440(d) applies to pending deportation cases. Petitioners argue that the Attorney

General improperly determined that AEDPA § 440(d) applied retroactively to

pending cases.

The government first argues that the Attorney General's decision in Soriano

is entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense

Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984). Chevron

generally requires that, in the absence of a direct expression of congressional

intent, courts defer to an agency's reasonable interpretation of its governing statute.

Id. at 843-44, 104 S. Ct. at 2782. It is far from clear, however, that deference is

appropriate under these circumstances. See, e.g., Sandoval, 166 F.3d at 239-40;

Henderson, 157 F.3d at 129; Goncalves, 144 F.3d at 126-27.[18] The question of a

statute's effective date is generally considered to be a pure question of law for

courts to decide. See Goncalves, 144 F.3d at 113. In contrast, Chevron is most

applicable in those statutory interpretation situations where Congress has delegated

---

[18]Furthermore, as Goncalves notes, even if deference is due, it may very well be due to the agency's, that is the BIA's, decision that § 440(d) should not apply to pending cases, as opposed to the Attorney General's decision that it should. See 144 F.3d at 126 n.20.

26

rule-making authority to an agency, in some respects, to rely on its expertise in a substantive field. <u>See</u> 467 U.S. at 865, 104 S. Ct. at 2793.

Assuming, <u>arguendo</u>, that <u>Chevron</u> does apply, it directs that courts should ascertain, "employing traditional tools of statutory construction," whether Congress has expressed "an intention on the precise question at issue." 467 U.S. at 843 n.9, 107 S. Ct. at 2781-82 n.9. <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 114 S. Ct. 1483, 128 L.Ed.2d 229 (1994), provides the framework for analyzing whether Congress expressed an intention for newly enacted statutory provisions to apply to pending cases.

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, <u>i.e.</u>, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280, 114 S. Ct. at 1505. "The presumption against retroactive legislation is deeply rooted in our jurisprudence." <u>Id.</u> at 265, 114 S. Ct. at 1497. Generally, statutes should not be applied retroactively unless "Congress has clearly

manifested its intent" to do so.  Hughes Aircraft Co. v. United States ex rel.

Schumer, 520 U.S. 939, ___, 117 S. Ct. 1871, 1876, 138 L.Ed.2d 135 (1997).

The Supreme Court further explicated Landgraf in Lindh v. Murphy, 521

U.S. 320, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), decided after the Attorney

General issued her decision  in Soriano.  Importantly, Lindh expands the tools

available to courts to determine congressional intent and directs that a court should

use the "normal rules of construction" and examine the text, structure, and history

of the legislation to determine whether Congress intended for there to be

retrospective application.  521 U.S. at ___, 117 S. Ct. at 2063.  In Lindh, where

Congress expressly provided for retroactive application in one provision of

AEDPA, the court determined that silence in another provision created a "negative

implication" that Congress intended prospective application when it had not

expressly provided for retroactive application.  Id. at ___, 117 S. Ct. at 2065-68.

Our application of the analysis instructed by Lindh to the present case shows that

several of AEDPA's immigration provisions contain explicit retroactivity language,

while § 440(d) is silent on this question.  See Goncalves, 144 F.3d at 128-31

(citing § 413, giving explicit effective date and § 421, which applied a restriction

on discretionary relief retroactively by employing an express "effective date"

28

provision).[19]  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." See INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S. Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (citation omitted).  Lindh's expansion of Landgraf allows us to determine by "negative implication" that Congress did not intend for § 440(d) to apply to cases pending on the date of enactment.[20]

The government argues, however, that congressional intent is not clear and we should apply Landgraf's second step which analyzes whether applying AEDPA § 440(d) to petitioners here would have a retroactive effect.  The government asserts that there would be no retroactive effect because a criminal alien has no "vested right" to discretionary relief.  While we have established that Congress intended only prospective application of AEDPA § 440(d), and therefore need not reach the second step of the Landgraf analysis, the Supreme Court noted in that case, that "[e]very statute, which takes away or impairs vested rights acquired

[19]In Boston-Bollers, we held that AEDPA § 440(a) applies to pending cases as a "prospective application of a jurisdiction eliminating statute."  See 106 F.3d at 354-55.  Section 440(d) is not a pure jurisdiction-eliminating statute, and therefore must be analyzed against the backdrop of Landgraf's presumption against retroactivity.

[20]This analysis, thereby, satisfies the Chevron instruction.  See Chevron, 467 U.S. at 843 n.9, 104 S. Ct. at 2781-82 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

29

under existing laws, or creates a new . . . disability, in respect to transactions or considerations already past, must be deemed retrospective." 511 U.S. at 269, 114 S. Ct. at 1499 (citation omitted). Prior to the passage of AEDPA, the petitioners had a statutory right to apply for a § 212(c) waiver. To prohibit them from making such an application now arguably "attaches a new disability" and imposes additional burdens on past conduct. See Hughes Aircraft, 520 U.S. at ___, 117 S. Ct. at 1877 (holding that statute eliminating defense to False Claims Act could not be applied retroactively).

The government further argues that aliens' criminal convictions do not entitle them to hold civil immigration laws static. We are not persuaded by this reasoning. "Even when the conduct in question is morally reprehensible or illegal, a degree of unfairness is inherent whenever the law imposes additional burdens based on conduct that occurred in the past." Landgraf, 511 U.S. at 282-83 n.35, 114 S. Ct. at 1506 n.35. See also Goncalves, 144 F.3d at 130 (the fact that an alien commits a crime that makes him deportable prior to AEDPA and "that the new restrictions merely eliminated a possible form of relief from those consequences, do not suffice to rebut the presumption against retroactivity").

A review of the legislative history confirms our interpretation of § 440(d). See Landgraf, 511 U.S. at 262, 114 S. Ct. at 1495 (analyzing legislative history to

confirm textual analysis).  The original Senate version of the bill that became AEDPA contained an explicit instruction that the provision, later structured as AEDPA § 440(d), would apply to pending cases .  See 141 Cong. Rec. S7559 (daily ed. May 25, 1995) ("[§ 440(d)] shall take effect on the date of enactment of this Act and shall apply to cases pending before, on, or after such date of enactment.").  The House version of that same provision, in contrast, was prospective.  See 142 Cong. Rec. H2295 (daily ed. Mar. 14, 1996) (citing H.R. 2703, 104th Cong. § 662 (1996), at 142).  When the bill emerged from the conference committee, the original Senate language making § 440(d)'s restrictions retroactive had been removed.  See H.R. Rep. No. 104-518 (1996), reprinted in 142 Cong. Rec. H3305, H3323 (daily ed. Apr. 15, 1996).  Congress was thus aware of the issue of the effective date of this provision and made a purposeful decision in rejecting the Senate's retroactive language.  See Cardoza-Fonseca, 480 U.S. at 442-43, 107 S. Ct. at 1218-19 ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language.") (citation omitted).

In conclusion, we hold that Congress intended that AEDPA § 440(d)'s amendment of INA § 212(c) should not apply to pending cases.  As a result, we

31

need not reach petitioners' claim that AEDPA § 440(d) violates the Equal

Protection Clause by eliminating the wavier process only for aliens deportable on

the basis of certain criminal offenses and not for aliens excludable from the United

States on the basis of those same offenses. We note that our analysis here is

limited to those cases involving aliens who fall under the transitional rules of

IIRIRA. Our holding does not affect, encompass, or decide the availability of

habeas corpus review to those petitioners who fall under the permanent rules of

IIRIRA. Our consideration of the specific claims addressed in this case, however,

convinces us that these petitioners have raised a meritorious challenge to the

Attorney General's application of AEDPA § 440(d) to pending cases.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court erred in

denying Gutierrez-Martinez' petition for habeas corpus on the ground that he failed

to raise an issue of grave constitutional dimensions over which the court could

exercise habeas corpus jurisdiction under the new immigration regime. We

therefore REMAND Gutierrez-Martinez' case to the district court for

reconsideration of his petition for habeas corpus relief pursuant to § 2241 in light

of this opinion. We further conclude that the district court erred in denying

Mayers' petition for habeas corpus on the grounds that it lacked subject-matter

jurisdiction to review his case and, in the alternative, that his challenge to the retroactive application of AEDPA § 440(d) did not constitute a potential fundamental miscarriage of justice that could be reviewed within the parameters of the new immigration statutes.  We therefore REVERSE the district court's order denying Mayers' habeas corpus petition.  Since Mayers had been granted a § 212(c) waiver by the BIA, the district court should instruct the BIA to reinstate Mayers' § 212(c) waiver.