PUBLISH

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

-------------------------------------------

No. 97-5283

-------------------------------------------

INS No. A17 599 144

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/26/99
THOMAS K. KAHN
CLERK

ROBERT A. LETTMAN,

Petitioner,

versus

JANET RENO, Attorney General, IMMIGRATION
AND NATURALIZATION SERVICE,

Respondents.

-------------------------------------------------------------------

Petition for Review of an Order of the
Immigration and Naturalization Service

-------------------------------------------------------------------

(February 26, 1999)

Before TJOFLAT and EDMONDSON, Circuit Judges, and KRAVITCH, Senior
Circuit Judge.

**PER CURIAM:**

Petitioner, Robert A. Lettman, appeals a decision of the Board of Immigration Appeals (BIA) ordering him deported to Jamaica. We reverse.

## Background

Lettman entered the United States from Jamaica in 1968. In 1987, Lettman was convicted of a third-degree murder in this country. In 1996, the INS

arrested Lettman and detained him for deportation. After a hearing, an Immigration Judge ordered Lettman deported. The BIA affirmed the order in a 1997 per curiam opinion. Lettman filed a timely appeal.

## Discussion

Before we can discuss Lettman's deportability, we must decide if we have jurisdiction to determine our jurisdiction, under the Illegal Immigration and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 309(c)(4)(G), 110 Stat. 3009, 3626-27 (IIRIRA). If we have jurisdiction to decide jurisdiction, we can decide whether Lettman is a deportable alien, within the meaning of the Immigration and Nationality Act § 241(a)(2)(A)(iii), 8 U.S.C.

4

§ 1227(a)(2)(A)(iii) (West Supp. 1998) (INA). If Lettman is a deportable alien, we must dismiss his appeal for lack of jurisdiction; but if he is not deportable, we must reverse the BIA's order. See IIRIRA, § 309(c)(4)(G), 110 Stat. at 3626-27.

A. Jurisdiction to Decide Jurisdiction

The IIRIRA applies to aliens in exclusion or deportation proceedings before 1 April 1997. *See id.* § 309(c)(1), 110 Stat. at 625. For aliens in deportation proceedings before 1 April 1997, who receive a final order of deportation on or after 31 October 1996, unique transitional rules of the IIRIRA apply. *See id.* § 309(c)(4), 110 Stat. at 3626-27. *See generally* Berehe v. INS, 114 F.3d 159, 160-61 (10th Cir. 1997) (explaining effective date of IIRIRA's transitional rules).

6

Because Lettman was in deportation proceedings beginning in 1996, the IIRIRA applies to him. Lettman is covered by the IIRIRA's transitional rules because the BIA issued a final order of deportation on 7 July 1997.

Section 309(c)(4)(G) of the IIRIRA's transitional rules, provides:

> [T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed [an aggravated felony].

Lettman was convicted of murder: an aggravated felony according to INA § 101(a)(43)(A), 8 U.S.C. § 101(a)(43)(A). We must decide whether Section 309(c)(4)(G) prevents appeal (thereby depriving us of jurisdiction) when the BIA decides an alien is deportable or whether we have jurisdiction to decide if an alien is deportable. If the BIA's determination is binding on us, then we must dismiss this appeal. If we can decide whether Lettman is deportable, then we retain

8

jurisdiction until we conclude he is deportable.

"When judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists. The doctrine that a court has jurisdiction to determine whether it has jurisdiction rests on this understanding." Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1997) (citing Land v. Dollar, 67 S. Ct. 1009, 1013 (1947)). The Supreme Court relied on this doctrine in Adamo

Wrecking Co. v. United States, 98 S. Ct. 566 (1978).

In *Adamo Wrecking*, an environmental statute made it unlawful to emit pollutants in excess of EPA "emission standard[s]." See *id.* at 568. The statute further provided that review of the EPA's decision "in promulgating . . . any emission standard . . . . Shall not be subject to judicial review . . . ." *Id.* at 569 (quoting 42 U.S.C. § 1857h-5(b) (1970 ed., Supp. V)). The Sixth Circuit reasoned that

deciding what constituted an emission standard was left to the EPA and, therefore, a defendant could not defend against prosecution in a federal court by arguing that the statute at issue was not an emission standard. See id. at 569. The Supreme Court reversed, stating that someone charged with violating the Clean Air Act "may defend on the ground that the 'emission standard' which he is charged with having violated was not an 'emission standard.' " Id. at 570.

This case is not too different from Adamo Wrecking. If federal courts had jurisdiction to decide whether a regulation is an emission standard, despite a provision otherwise barring judicial review, we think we have jurisdiction to decide if an alien is deportable, despite a provision otherwise barring appeals. We are not alone in this conclusion. See Hall v. INS, (4th Cir. 1999); See also Okoro v. INS, 125 F.3d 920, 925 n.10 (5th Cir. 1997) (statutory

provision barring judicial review for "deportable" aliens allows decision on whether alien is deportable); Yang, 109 F.3d at 1192 (same).[1] We conclude, therefore,

---

[1] We, like the Okoro and Hall courts, are not persuaded by Berehe v. INS, 114 F.3d 159, 161 (10th Cir. 1997). Berehe is more similar to this appeal than Okoro and Yang because Berehe construed Section 309(c)(4)(G) of the IIRIRA, but Okoro and Yang applied portions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) similar to IIRIRA. The Berehe court distinguished Yang on two grounds. First, the court found the statutory language of the IIRIRA ("there shall be no appeal permitted") clearer in foreclosing review than the language of

13

that we have jurisdiction to decide

whether we have jurisdiction; but our

---

the statute in <u>Yang</u> ("Shall not be subject to review by any court"). <u>See</u> <u>Berehe</u>, 114 F.3d at 161. Second, <u>Berehe</u> noted the IIRIRA's legislative intent to expedite deportation of criminals. <u>See</u> <u>id.</u> at 162. We are unconvinced that the distinctions made by the <u>Berehe</u> court require a different result than <u>Yang</u> and <u>Okoro</u>. We do not think the differences in statutory language are significant; the legislative intent is not sufficiently clear on this point. <u>See</u> <u>Hall</u>, (rejecting <u>Berehe</u>'s reading of Section 309(c)(4)(G)). Moreover, the <u>Berehe</u> court never attempted to reconcile its decision with <u>Adamo Wrecking</u>.

14

jurisdiction disappears if Lettman is deportable

## B. Jurisdiction Based on Lettman's Deportability

Lettman argues that he is not deportable because he committed his aggravated felony in 1987 and that a crime committed in 1987 cannot be the basis for deportation. To understand Lettman's argument requires an

explanation of several acts amending the INA.

Congress passed the Anti-Drug Abuse Act of 1988 (ADAA) and defined "aggravated felony" for the first time. The definition included murder. See Pub. L. No. 100-690, §7342, 102 Stat. 4181, 4469-70 (1988) (amending 8 U.S.C. § 1101(a)(43)). Congress gave no effective date for the definition. We conclude, as all other circuit courts examining this question have concluded, that the definition of

aggravated felony applies to all crimes whether committed before, on, or after the effective date of the ADAA. *See United States v. Baca-Valenzuela*, 118 F.3d 1223, 1228-30 (8th Cir. 1997) (discussing effective date and summarizing cases); *Scheidemann v. INS*, 83 F.3d 1517, 1523-25 (3rd Cir. 1996); *See also Matter of A-A-*, 20 I&N Dec. 492, 498 (B.I.A. 1992).

Moreover, unless the definition of "aggravated felony" in the ADAA includes convictions before the ADAA's

enactment, the six sections of the ADAA that attach adverse consequences to an aggravated felony conviction do not make sense. For example, Section 7345(a)(2) of the ADAA provides criminal penalties for the illegal reentry of aliens "whose deportation was subsequent to a conviction for commission of an aggravated felony." The penalties apply to an "alien who enters, attempts to enter, or is found in, the United States on or after the date

of the enactment" of the ADAA. Section 7345(b), 102 Stat. at 4471. To use the new penalties against an alien who arrived on the date of the ADAA's enactment, the aggravated felony conviction would have had to occur before the ADAA's enactment.

Section 7349 of the ADAA is similar to Section 7345. See 102 Stat. at 4473. Section 7349(b) bars reentry to the United States for 10 years following deportation, for aliens convicted of an

aggravated felony. The 10-year bar for reentry applies to aggravated felons who seek admission on or after the date of the ADAA's enactment. For this bar to apply to aliens seeking admission on the date of the ADAA's enactment, the aggravated felony conviction must occur before the enactment of the ADAA.

A number of amendments have been made to the definition of aggravated felony, but none have altered the effective date for cases where the alien

20

has been convicted of murder.[2]  We conclude, therefore, that the definition of aggravated felony applies to murders committed before, on, or after the enactment of the ADAA.

As we just recounted, however, the sections that attach immigration consequences to aggravated felony

---

[2] Section 321(b) of the IIRIRA, as explained below, may provide an alternate ground for deciding that no temporal restrictions exist on the definition of "aggravated felony."  We do not decide that issue today, however.

convictions (like Section 7345 and Section 7349) have their own unique effective dates. Deportation is such a consequence. See Scheidemann, 83 F.3d at 1524 (citing ADAA § 7344, governing deportability, as a "specific adverse immigration consequence[]"). To deport an aggravated felon, therefore, the aggravated felon's conviction must occur after the effective date of the deportation "consequence."

Section 7344 of the ADAA allows deportation of aggravated felons. See 102 Stat. at 4470-71. This deportation ground applies only to an aggravated felon "convicted, on or after the date of the enactment" of the ADAA. See id.; Matter of A-A-, 20 I&N Dec. at 497 (interpreting Section 7344 in this manner to show that "where Congress desired to limit the reach of a disabling provision in the [ADAA] to certain aggravated felons -- such as those convicted on or after a certain date -- it expressly did so").

The INS insists that Section 321 of the IIRIRA[3] eliminated the distinction

---

[3] Section 321 provides in pertinent part:

Sec. 321 Amended Definition of Aggravated Felony.

(a) IN GENERAL.—Section 101(a)(43) . . . is amended—

(1) in subparagraph (A), by inserting ", rape, or sexual abuse of a minor" after "murder";

. . . .

(b) EFFECTIVE DATE OF DEFINITION.—Section 101(a)(43) (8 U.S.C. 1101(a)(43)) is amended by adding at the end the following sentence: "Notwithstanding any other provision of law (including effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.".

(c) EFFECTIVE DATE.—The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred, and shall

between temporal restrictions on the definition of "aggravated felony" and temporal restrictions on related immigration consequences. We think the INS is mistaken.

Before the IIRIRA (as discussed above), it is indisputable that a distinction existed between the effective date of immigration "consequences" like

_____

apply under Section 276(b) of the Immigration and Nationality Act only to violations of Section 276(a) of such Act occurring on or after such date.

25

deportation and the effective date of crimes considered an "aggravated felony." See Scheidemann, 83 F.3d at 1523-24; Matter of A-A-, 20 I&N Dec. at 495-98.[4] Congress is presumed to know the

---

[4] The INS's reliance on Lopez-Amaro v. INS, 25 F.3d 986 (11th Cir. 1994), to prove otherwise is misplaced. Lopez-Amaro concluded that a conviction for a firearms offense before 1988 allowed deportation. See id. at 988. But, Lopez-Amaro was not faced with separate statutory provisions for the definition of a crime and the crime's immigration consequences. In addition, Lopez-Amaro relied, in significant part, on Section 602(c) of the Immigration Act of 1990 (IMMACT). See id. Section 602(c)

current law of the area in which they are legislating. _See, e.g., Cannon v. University of Chicago_, 441 U.S. 677, 696-98 (1979). So, we can presume that Congress was aware of the difference between the effective dates of "consequences" and the

Specifically amended the effective date of the deportation consequence in Section 241(a)(2)(C) of the _INA_ associated with a firearms conviction. _See_ 104 Stat. at 5077. As we have said, no such amendment exists in this case to the effective date of the deportation consequence associated with an aggravated felony. This distinction is sufficient to make _Lopez-Amaro_ unpersuasive in this case.

27

effective dates of crimes constituting an aggravated felony. Section 321, however, falls within the definition section of the IIRIRA. If Congress wanted the immigration consequences fully retroactive, we believe that Congress would make those changes in the portion of the statute addressing the immigration consequences. See INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987) (noting that, where Congress includes particular language in one section of

statute but omits it from another section, it is generally presumed that Congress acted intentionally and purposely in omission or inclusion). When Congress has altered the effective date of a consequence, they have done so in the portion of the statute dealing with the consequence. See Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 306(a)(13), 105 Stat. 1733, 1752 (1991) (MTINA) (amending the

Immigration Act of 1990, Pub. L. No. 101-649, § 514(b)(1), 104 Stat. 4978, 5053 (1990) (IMMACT) to bar asylum for aliens convicted of aggravated felony before, on, or after enactment of the MTINA rather than only those aggravated felons convicted on or after enactment of IMMACT).

We think Section 321(b)[5] is intended to eliminate the temporal restrictions that existed for the different kinds of aggravated felonies.[6] In 1990, Congress amended the definition of "aggravated felony" to include additional offenses, like some drug crimes, and expressly provided

---

[5] Our discussion concerns Section 321(b), as we think Section 321(c) is no more than an effective date for the other changes made by Section 321.

[6] This interpretation seems a superior explanation of Section 321 than the explanation given by the government, but is not necessary to our result.

that these new crimes only constituted aggravated felonies for convictions occurring after the amendment's enactment. See Immigration Act of 1990, Pub. L. No. 101-649, § 501(b), 104 Stat. 4978, 5048 (1990). Other crimes were added by a later amendment, and these crimes also applied prospectively. See Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222(b), 108 Stat. 4305, 4322 (1994). After the 1994 statute, the crimes

generally constituting an aggravated felony in the ADAA still contained no temporal restrictions, but many of the crimes added to the definitions by the 1990 and 1994 acts applied only if the conviction occurred after the enactment of the pertinent act. So, we think Section 321 can be best understood as eliminating the temporal restrictions on the 1990 and 1994 acts.[7]

---

[7]We note that, in regulations produced after IIRIRA, the INS appears to accept that the immigration consequences of

the ADAA with an explicit effective date were unaffected by the IIRIRA. Section 7343(c) of the ADAA governing voluntary departure of aggravated felons – similar to Section 7344(b) of the ADAA governing deportability of aggravated felons – sets out a "consequence" of being an alien convicted of an aggravated felony that is purely prospective: aliens convicted of an aggravated felony are ineligible for voluntary departure if the conviction occurred "on or after the date of the enactment of this Act." The current regulations on voluntary departure contain this provision: "[A]n alien who is deportable because of a conviction on or after [enactment of the ADAA], for an aggravated felony as defined in section 101(a)(43) of the [INA] shall not be eligible for voluntary departure . . . ." Suspension of Deportation and

34

The only evidence suggesting that Section 321 was intended to eliminate the temporal restrictions associated with the consequences of being an aggravated felon is the apparent congressional desire to expedite deportation of criminal aliens. The Senate Judiciary Report preceding the IIRIRA expressed a desire to "expedite[]

_____

Voluntary Departure, 8 C.F.R. § 240.56 (1998). The pertinent provision was issued in 1997: after the IIRIRA. See 62 Fed. Reg. 10377 (1997).

the removal of excludable and deportable aliens, especially criminal aliens." S. Rep. No. 104-249, at 3 (1996). This statement falls short of expressing a desire that all criminal aliens be removed regardless of their date of conviction. Also, we note the section-by-section analysis of the report: "the amended definition of 'aggravated felony' applies to offenses that occurred before, on, or after the date of enactment." Id. at 40. This

36

statement limits the pertinent change to the "definition" of "aggravated felony."

Lettman was convicted of murder in 1987. Lettman, therefore, is an aggravated felon under the INA. But, Lettman's 1987 conviction was before the effective date of the provision allowing for deportation of illegal aliens. The INS may not, therefore, deport Lettman. Because Lettman is not deportable, we retain jurisdiction over his appeal. For the reasons we have

already given, we reverse the order of

the *INS* deporting Lettman.

REVERSED and REMANDED.