**Pastora Rubi LOPEZ–MORGAN, Petitioner,**

v.

**Janet RENO, United States Attorney General, Doris Meissner, Commissioner of the Immigration and Naturalization Service, Robert Wallis, Miami District Director of the Immigration and Naturalization Service, and Department of Immigration and Naturalization Service, Respondents.**

No. 98–1649–CIV.

United States District Court, S.D. Florida.

March 23, 2000.

Samuel D. Blanco, Coral Gables, FL, for petitioner.

Dexter A. Lee, Asst. U.S. Atty., Miami, FL, for respondents.

## ORDER GRANTING RENEWED PETITION FOR WRIT OF HABEAS CORPUS

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Pastora Rubi Lopez–Morgan's renewed petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241. The Court referred the matter to Magistrate Judge Barry L. Garber, who has issued a Report and Recommendation advising that the petition should be denied. Having conducted a *de novo* review of this matter, including consideration of the petitioner's objections to the Report and Recommendation and the government's response thereto, the Court respectfully declines to adopt Magistrate Judge Garber's recommendation. Hence, for the reasons stated below, the Court grants Pastora Rubi Lopez–Morgan's renewed petition for writ of habeas corpus.

## PROCEDURAL BACKGROUND AND FACTUAL FINDINGS [1]

1. Petitioner Pastora Rubi Lopez–Morgan is a native and citizen of Nicaragua. She was born on November 11, 1965, and arrived in the United States on July 10, 1981, to live with her mother in Miami, Florida. Thereafter, she attained the status of lawful permanent resident through her mother.

2. On August 15, 1990, Lopez–Morgan was indicted in the District of Puerto Rico on various drug charges, after having been involved in a drug smuggling scheme aboard a cruise ship. She pled guilty to one of the charges: aiding and abetting the possession of approximately 16.13 kilograms of cocaine (gross weight) with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The other charges were dismissed. On December 5, 1990 she was sentenced to a 60–month term of incarceration, followed by four years of supervised release.

3. On November 14, 1994, while Lopez–Morgan was serving her sentence at FMC Lexington, Kentucky, the Immigration and Naturalization Service ("INS") issued an order to show cause, charging her with being deportable pursuant to Sections 241(a)(2)(A)(iii) and 241(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(2)(B)(i), respectively.[2]

4. The show cause order directed Lopez–Morgan to appear for a hearing, which would be scheduled at a later date before an immigration judge. Upon completion of her sentence of imprisonment, Lopez–Morgan was taken into custody by the INS. On December 27, 1994, she was released on bond, pending her deportation hearing.

5. On February 6, 1996, Lopez–Morgan filed a timely request for waiver of deportation, pursuant to Section 212(c) of the

1. The Court has combined the procedural background of the case with factual findings regarding the proceedings below in order to present a cogent framework for its decision in this matter. Both aspects are derived entirely from the record, since no additional evidence was submitted by the parties. In this regard, the Court notes that a hearing held by Magistrate Judge Garber on October 13, 1999 was limited to oral argument.

2. The first provision renders deportable an alien who is convicted of an aggravated felony at any time after admission. The term "aggravated felony" includes "illicit trafficking in a controlled substance". 8 U.S.C. § 1101(43)(B). The second provision renders deportable an alien who at any time after admission has been convicted of a violation relating to a controlled substance (other than possession of 30 grams or less of marijuana for one's own use).

INA. On March 6, 1996, Immigration Judge Ronald G. Sonom held a hearing in Miami, Florida, at which Lopez–Morgan acknowledged proper service of the order to show cause, admitted all of the allegations of fact contained in the order and conceded deportability. At that hearing, Judge Sonom received documentary and testimonial evidence offered by Lopez–Morgan in support of her request for waiver of deportation. The matter was continued to April 1, 1996 for rendering of a decision. However, on that date, Judge Sonom requested further information, in the form of a report from Lopez–Morgan's probation officer.[3]

6. On April 10, 1996, when the matter came up again, Judge Sonom was informed that the probation officer would not render a report absent a subpoena. Judge Sonom then stated:

> I do believe that as this respondent is presently in probation, that it is a significant factor that this Court must consider in rendering a decision on this matter. While it goes without saying that if she were responsible for some serious violation, she probably wouldn't be in Court today, she'd be in some sort of custody, it does not mean that she hasn't violated this thing of a minor nature. I want to find out if there has been any violation whatsoever, whether minor or serious, or whether, in fact, this respondent has been obeying all of the terms of her probation, and has, in fact, been a model probationer. This matter is going to be reset for that, for the testimony of

that officer. *See* Exhibit B to Lopez–Morgan's original petition for writ of habeas corpus (D.E.# 5).

The subpoena for the probation officer issued on April 12, 1996, and the matter was reset to May 28, 1996.

7. On that date, the INS filed a motion to pretermit Lopez–Morgan's application for waiver of deportation, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which had been enacted on April 24, 1996.[4]

8. On November 25, 1996, Judge Sonom issued his oral decision in Lopez–Morgan's case. Judge Sonom found that deportability had been established by "clear, convincing, and unequivocal evidence." *See* Exhibit D to the government's return to the original petition for writ of habeas corpus (D.E.# 10). Applying Section 212(c) of the INA, as amended by the recently enacted AEDPA, Judge Sonom concluded that, as a matter of law, Lopez–Morgan was not entitled to waiver of deportation.[5] Therefore, Judge Sonom granted the government's motion to pretermit Lopez–Morgan's application for waiver of deportation. Notwithstanding this determination, Judge Sonom also ruled on the merits of Lopez–Morgan's Section 212(c) application. After weighing the positive equities adduced by Lopez–Morgan against the negative factors arising from her conviction, Judge Sonom exercised his discretion to deny the requested relief.[6]

---

3. The Court has relied on Lopez–Morgan's original petition for writ of habeas corpus (D.E.# 5) for some of the events detailed in this portion of the chronology.

4. According to Lopez–Morgan's account, the probation officer did not appear at the May 28, 1996, hearing as required by the subpoena. There is no indication on the record of any further efforts on the part of Judge Sonom to receive the probation officer's input.

5. The AEDPA amended Section 212(c) of the INA to preclude relief for an alien found deportable due to the commission of an ag-

gravated felony. This provision is currently found at 8 U.S.C. § 1229b(a).

6. In her objections to Magistrate Judge Garber's Report and Recommendation, Lopez–Morgan argues that Judge Sonom's discussion of the merits of her request is "relegated, at best, to the realm of dicta." *See* Petitioner's objections, at 2 (D.E.# 33). Lopez–Morgan seizes on the "Order" portion of Judge Sonom's oral decision, wherein he grants the motion to pretermit and orders Lopez–Morgan to be deported, but makes no explicit ruling on the request for waiver. Lopez–Morgan ignores, however, Judge Sonom's final statement in his conclusions of law: "It is

9. Lopez–Morgan appealed Judge Sonom's decision to the Board of Immigration Appeals ("BIA"). On January 9, 1998, the BIA dismissed Lopez–Morgan's appeal. The BIA concluded that Lopez–Morgan was statutorily ineligible for relief from deportation under Section 212(c) by operation of the AEDPA, thereby affirming Judge Sonom's primary ruling. The BIA did not address Judge Sonom's secondary ruling; i.e., his denial on the merits of Lopez–Morgan's application for waiver of deportation. Because Lopez–Morgan had conceded deportability in reliance of the relief afforded by the pre-AEDPA version of Section 212(c), the BIA granted her leave to request that the proceedings be reopened for the limited purpose of contesting deportability. *See* Exhibit F to the government's return to the original petition for writ of habeas corpus (D.E.# 10).

10. Thereafter, Lopez–Morgan filed a motion to reopen in accordance with the BIA's ruling. On May 26, 1998, however, the BIA denied the motion to reopen. The BIA stated: "The record of proceedings clearly, unequivocally, and convincingly establishes the respondent's deportability; therefore, no useful purpose would be served by remanding this case to the Immigration Judge to allow the respondent to contest deportability further. Accordingly, the appeal is again dismissed." *See* Exhibit G to the government's return to the original petition for writ of habeas corpus (D.E.# 10).[7]

11. Lopez–Morgan did not seek judicial review of either of the two BIA orders before the Eleventh Circuit Court of Appeals.[8]

12. On July 9, 1998, the INS took Lopez–Morgan into custody for deportation to Nicaragua in the early hours of Monday, July 13, 1998. Literally hours prior to execution of the deportation order, Lopez–Morgan commenced this action with the filing of an emergency ex-parte motion for temporary stay of deportation. On July 13, 1998, at 12:42 a.m., the undersigned granted a 24-hour stay of deportation to allow Lopez–Morgan time to file a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Lopez–Morgan filed her petition on July 13, 1998 at 4:28 p.m., along with an emergency motion for stay of deportation pending ruling on her petition. On that same day, the undersigned granted Lopez–Morgan's motion for stay of deportation.

therefore the Court's decision that even if eligible for the relief requested, the respondent, as a matter of discretion would not be granted [] the relief sought under Section 212(c) of the Act." *See* Exhibit D to the government's return to the original petition for writ of habeas corpus (D.E.# 10). Moreover, a written order issued on November 26, 1996 by Judge Sonom explicitly states: "Respondent's application for waiver under Section 212c of the Immigration and Nationality Act was denied." *See* Exhibit E to the government's return to the original petition for writ of habeas corpus (D.E.# 10). Although the written order provides that, for purposes of appeal, the oral decision constitutes the official decision in the matter, the written ("unofficial") order comports with Judge Sonom's legal conclusion in oral ("official") decision, cited above. Therefore, the Court rejects Lopez–Morgan's interpretation of Judge Sonom's ruling.

7. At this point, the proceedings become reminiscent of Joseph Heller's novel "Catch–22":

There was only one catch and that was Catch–22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions.... If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to.... "That's some catch, that Catch–22," he [Yossarian] observed. "It's the best there is," Doc Daneeka agreed.

*Catch–22 [1955], ch. 5,* cited in *Bartlett's Familiar Quotations,* at 902, ¶ 8 (15th ed.1980).

8. The "catch" continues... As more fully discussed below, such an appeal would have been summarily dismissed by the Eleventh Circuit for lack of jurisdiction. Yet, the government argues that Lopez–Morgan's past failure to engage in this exercise in futility bars her from relief in these proceedings.

13. The matter was referred to Magistrate Judge Linnea R. Johnson, who issued a Report and Recommendation on December 18, 1998, advising that the petition should be denied for lack of subject matter jurisdiction, pursuant to *Richardson v. Reno,* 162 F.3d 1338 (11th Cir.1998) ("Richardson I").[9] On January 15, 1999, the undersigned adopted Magistrate Judge Johnson's recommendation and denied the petition.

14. On May 27, 1999, Lopez–Morgan filed another emergency exparte motion for temporary stay of deportation, indicating that her deportation to Nicaragua was imminent.[10] In support of her motion, Lopez–Morgan argued that, in light of an intervening change in the law of the Eleventh Circuit, she intended to file a second petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241. On May 28, 1999, United States District Judge K. Michael Moore, acting for the undersigned, granted the motion to stay deportation, pending ruling on her anticipated petition.

15. Lopez–Morgan filed her renewed petition on August 5, 1999. On August 26, 1999, the undersigned referred the matter to Magistrate Judge Barry L. Garber.[11]

As previously noted, Magistrate Judge Garber has recommended that the petition be denied, but the undersigned declines to adopt that recommendation.[12]

## DISCUSSION

### 1. Subject matter jurisdiction:

█ The Court first addresses the issue of whether it has jurisdiction to hear Lopez–Morgan's petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241. As previously noted, on January 15, 1999, the Court denied Lopez–Morgan's first petition for lack of subject matter jurisdiction, under the then prevailing law of the Eleventh Circuit as articulated in *Richardson I.* On May 20, 1999, however, the Eleventh Circuit issued *Mayers v. U.S. Dept. of I.N.S.,* 175 F.3d 1289 (11th Cir.1999). In *Mayers,* the Eleventh Circuit determined that district courts continued to have habeas corpus jurisdiction under Section 2241 for cases covered by the transitional rules promulgated in Section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The parties agree that Lopez–Morgan's case falls under IIRIRA's transitional rules.[13]

**9.** In *Richardson I,* the Eleventh Circuit ruled that the amendments to the INA effectuated by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which had been enacted on September 30, 1996, precluded habeas jurisdiction over petitions challenging an alien's removal proceedings.

**10.** As stated above, Lopez–Morgan was placed in INS custody on July 9, 1998. Since that time, she has been held at the Krome Processing Center in Miami, Florida, pending deportation.

**11.** During the interval between Lopez–Morgan's first and second petitions, a Magistrate Judges Pairing Plan was instituted in the Miami Division of the Southern District of Florida. As a result, Magistrate Judge Garber was "paired" with the undersigned.

**12.** According to the minutes of the oral argument session held by Magistrate Judge Garber on October 13, 1999, at the conclusion of the hearing Magistrate Judge Garber directed "Counsel to prepare proposed Report and

Recommendations which are to be submitted to the Court for consideration by 11/30/99." (D.E.# 26). On the prescribed date, the government filed its proposed Report and Recommendation "as directed by the Honorable Barry L. Garber, United States Magistrate Judge, on October 13, 1999." (D.E.# 27). Magistrate Judge Garber's Report and Recommendation, issued on January 12, 2000, essentially adopts the government's submission.

**13.** IIRIRA's transitional rules apply to deportation cases commenced prior to April 1, 1997, in which a final order of deportation was entered on or after October 30, 1996. As noted above, Lopez–Morgan's deportation proceedings commenced on November 14, 1994, with the issuance of the order to show cause. On January 9, 1998, the BIA dismissed Lopez–Morgan's appeal, and on May 26, 1998, the BIA denied her motion to reopen and dismissed her second appeal. The Court deems the second BIA ruling to constitute the final order of deportation in these proceedings.

The government challenges the Court's exercise of habeas jurisdiction in this case pursuant to *Mayers*. According to the government, the *Mayers* holding was limited by the Eleventh Circuit in *Richardson v. Reno*, 180 F.3d 1311 (11th Cir.1999) ("Richardson II"), to cases in which the alien had sought review in the Court of Appeals prior to filing a Section 2241 petition. Specifically, the government relies on the following passage from the *Richardson II* court's discussion of the *Mayers* decision:

> Before seeking habeas relief, the aliens in *Mayers* had exhausted all available administrative remedies and had sought, but been denied, all judicial review in the court of appeals in a two sentence unpublished order issued prior to this Court's decision in *Lettman v. Reno*, 168 F.3d 463 (11th Cir.1999). Thus, three elements were crucial in *Mayers:* (1) the aliens were subject to a final deportation order after BIA review; (2) the aliens first had filed a petition for judicial review under the INA in the court of appeals *before* filing a § 2241 petition; and (3) the aliens had been unable to obtain any judicial review whatsoever in the court of appeals. Additionally, while the criminal aliens in *Mayers* had been unable to obtain any judicial review in the court of appeals, it is now clear in this Circuit that criminal aliens, post-*Lettman,* will be able to obtain judicial review of whether they are aliens and deportable.

*Richardson II*, 180 F.3d at 1316–17 n. 6.[14]

According to the government, Lopez–Morgan cannot satisfy the second and third elements deemed by the *Richardson II* court to have been crucial in *Mayers* because she did not appeal either of the two BIA orders to the Eleventh Circuit. Lopez–Morgan counters that, at the time of issuance of the BIA orders, which was prior to the *Lettman* decision, she was foreclosed from seeking any judicial review of the BIA's rulings in the Court of Appeals. Nonetheless, the government interprets *Richardson II* as requiring an attempt to obtain judicial review, even a futile one. A close reading of *Mayers,* however, reveals that the *Richardson II* gloss was predicated on the procedural posture of only one of the two *Mayers* appellants.

In *Mayers*, the Eleventh Circuit consolidated for appeal the cases of two aliens, Efrain Gutierrez–Martinez and Trevor Mayers, each of whom had challenged district court dismissals of their respective petitions for habeas corpus. Like Lopez–Morgan, Gutierrez–Martinez and Mayers fell under IIRIRA's transitional rules. The issue before the *Mayers* court was whether the AEDPA should apply to an alien's application for waiver of deportation under Section 212(c) of the INA, when such request had been pending at the time of passage of the AEDPA. The Eleventh Circuit first addressed whether federal habeas jurisdiction was available to consider the appeal. Noting that Gutierrez–Martinez and Mayers had been unable to obtain any judicial review and were challenging final orders of deportation, the Eleventh Circuit concluded that the exercise of federal habeas jurisdiction was proper. *Mayers,* 175 F.3d at 1297. The Eleventh Circuit reached this conclusion even though the two aliens under consideration were not similarly situated in terms of their efforts to obtain judicial review. As noted by the *Mayers* court, Efrain Gutierrez–Martinez had filed a petition for judicial review of the BIA's deportation order, but the petition had been dismissed "in an unpublished, two sentence order." *Mayers,* 175 F.3d at 1294

---

**14.** In *Lettman v. Reno,* 168 F.3d 463 (11th Cir.1999), the Eleventh Circuit construed Section 309(c)(4)(G) of the transitional rules of IIRIRA, which provides that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed an aggravated felony." *Lettman,* 168 F.3d at 464. The *Lettman* court decided that, notwithstanding the statutory language, it had jurisdiction to determine whether the alien was deportable within the meaning of the INA.

and n. 6. Thereafter, Gutierrez–Martinez filed a petition for habeas corpus review under 28 U.S.C. § 2241 in the district court. Trevor Mayers, on the other hand, had directly challenged the BIA's deportation order by way of a petition for habeas corpus review in the district court. *Id.* at 1295.[15] Thus, Lopez–Morgan and Mayers are similarly situated in terms of their inability to obtain judicial review of the BIA's final deportation order. Because the Eleventh Circuit concluded that the district court had habeas jurisdiction to address Mayers' Section 2241 petition, the Court concludes that it may properly exercise federal habeas jurisdiction over Lopez–Morgan's case.

After deciding the jurisdictional issue, the *Mayers* court went on to determine that the AEDPA should not apply retroactively to an alien's application for waiver of deportation under Section 212(c) of the INA, when such request had been pending at the time of passage of the AEDPA. This ruling encompasses Lopez–Morgan's case. Moreover, for cases arising in the Eleventh Circuit, the BIA now follows the *Mayers* holding. *See In Re Raola–Rosario,* B.I.A., Nov. 24, 1999 (attached as Exhibit A to petitioners' objections, D.E. # 33). Yet, the government contends that the *Mayers* holding was overruled by the United States Supreme Court's statutory retroactivity analysis in *Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). The government argues that, while the BIA must wait for the Eleventh Circuit or the Supreme Court to declare that *Mayers* is no longer valid, this court is free to determine that the decision "is no longer applicable." *See* Response to petitioner's objections, at 10 (D.E.# 37). The Court declines the government's invitation to ignore the *Mayers* holding, which is on all fours with this case, and which is still binding precedent in this circuit.[16] In accordance with *Mayers,* therefore, the Court concludes that the AEDPA was improperly applied retroactively by the BIA to dismiss Lopez–Morgan's appeal. Since the BIA did not consider the merits of Lopez–Morgan's Section 212(c) application, the Court remands the matter to the BIA to conduct such a review.

*CONCLUSION*

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Pastora Rubi Lopez–Morgan's renewed petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, is GRANTED. This Cause is hereby REMANDED to the Board of Immigration Appeals so that the Board may consider the merits of the petitioner's appeal from the immigration judge's denial of her request for relief from deportation, pursuant to Section 212(c) of the Immigration and Nationality Act. All pending motions not otherwise ruled upon are DENIED as moot and this case is CLOSED.

---

**15.** This distinction is highlighted in the court's later comment that "Gutierrez–Martinez did file a petition for review" without mentioning Mayers. *Id.* at 1296 at n. 7.

**16.** Indeed, in the Eleventh Circuit "a prior decision of the circuit (panel or en banc) [cannot] be overruled by a panel but only by the court sitting en banc." *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).