[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13624

_____

INS No. A26-646-200

ABDUL ITANI,

Petitioner,

versus

JOHN ASHCROFT, U.S. ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(April 22, 2002)**

Before BLACK and HULL, Circuit Judges, and HAND\*, District Judge.

PER CURIAM:

Abdul Itani petitions for review of a decision of the Board of Immigration

_____

\*Honorable William B. Hand, U.S. District Judge for the Southern District of
Alabama, sitting by designation.

Appeals ("BIA") dismissing an appeal from his order of deportation. Itani argues that his criminal conviction for misprision of a felony, 18 U.S.C. § 4, does not constitute a crime of moral turpitude for which he can be deported, and that he is entitled to a discretionary waiver of inadmissibility. After review and oral argument, we affirm the BIA's decision and deny Itani's petition for review.

## I. BACKGROUND

Itani is a native and citizen of Lebanon. He last entered the United States in 1984 on a non-immigrant student visa. On January 20, 1987, the FBI arrested Itani in South Carolina for participating in a scheme to rent automobiles, report them stolen to local police and export them from Texas to Kuwait. On February 6, 1987, a federal grand jury in Houston indicted Itani on charges related to the interstate transportation of stolen automobiles, 18 U.S.C. §§ 2, 371, 2312. On January 5, 1988, Itani pleaded guilty to one count of misprision of a felony, 18 U.S.C. § 4. On January 7, 1988, the district court in Houston sentenced Itani to three years in prison and ordered him to pay a $25,000 fine, but suspended these sanctions in favor of three years of probation.

On August 29, 1991, Respondent Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging Itani with being deportable (1) because he had been convicted of a crime of moral turpitude within five years after his date of entry and sentenced to confinement for a year or more, 8 U.S.C. §

2

1251(a)(2)(A)(i) (1991), and (2) because he was an alien who had remained in the United States for longer than the time permitted, 8 U.S.C. § 1251(a)(1)(B) (1991).

After a hearing on July 26, 1993, the immigration judge ("IJ") found Itani deportable as charged, denied his request for discretionary relief, and ordered Itani deported to Lebanon. On May 30, 2001, the BIA dismissed Itani's appeal, concluding that (1) misprision of a felony is a crime of moral turpitude because it requires the affirmative, intentional concealment of a known felony and has been condemned at common law, and (2) Itani had not shown the required hardship necessary for a discretionary waiver of inadmissibility. Itani timely filed a petition for review of the BIA's decision.[1]

## II. DISCUSSION

A.    Classification of Misprision of A Felony As Crime of Moral Turpitude

Itani first argues that the crime of misprision of a felony in 18 U.S.C. § 4 does not qualify as a crime of moral turpitude for which he can be deported. Immigration law provides that an alien is deportable if he "(I) is convicted of a crime involving moral turpitude committed within five years after the date of entry,

---

[1]  Itani subsequently filed a motion to reconsider and reopen the BIA's decision, but the denial of that motion was not included in any notice of appeal to this Court. Regardless, we conclude that the BIA's ruling on the motion to reconsider and reopen, which the INS submitted to this Court with its brief, does not impact our analysis here.

and (II) either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer." 8 U.S.C. § 1251(a)(2)(A)(i) (1991).[2]

Although the term "moral turpitude" is not defined by statute, courts have taken note of its meaning, observing that it involves:

> An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man. Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude.

---

[2] Both parties agree that because Itani's deportation proceedings began prior to April 1, 1997, the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (1996), govern this case. As we have held:

> IIRIRA's transitional rules provide that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense" described in specific enumerated sections [including crimes of moral turpitude, 8 U.S.C. § 1182(a)(2)]. IIRIRA § 309(c)(4)(G), reprinted in 8 U.S.C. § 1101 note. Notwithstanding this restriction, this Court retains jurisdiction to determine whether an alien is deportable under the immigration statute. See Lettman v. Reno, 168 F.3d 463, 465 (11th Cir. 1999). Because judicial review is limited by statutory conditions, courts retain jurisdiction to determine whether those conditions exist. See id. As explained in Lettman, this determination involves considering whether the petitioner is (1) an alien (2) deportable (3) by reason of a criminal offense listed in the statute. See id. We thus have jurisdiction over [an alien's] petition for direct review to determine whether the BIA correctly concluded that [an alien] is deportable.

Farquharson v. U.S. Att'y Gen'l, 246 F.3d 1317, 1320 (11th Cir. 2001). We review the BIA's statutory interpretation de novo, but defer to its reasonable interpretations. Moore v. Ashcroft, 251 F.3d 919, 921 (11th Cir. 2001).

4

United States v. Gloria, 494 F.2d 477, 481 (5th Cir. 1974) (quoting United States v. Smith, 420 F.2d 428, 431 (5th Cir. 1970) and Black's Law Dictionary 1160 (4th ed. 1957)).  Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct.  See, for example, Rodriguez-Herrera v. INS, 52 F.3d 238, 239-40 (9th Cir. 1995).

> The offense of misprision of a felony is defined as follows:
>
> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4.  Such activity has been a federal crime since the First Congress, for "the common law recognized a duty to raise the 'hue and cry' and report felonies to the authorities. . . . It is apparent from this statute, as well as from our history and that of England, that concealment of crime and agreements to do so are not looked upon with favor.  Such conduct deserves no encomium."  Branzburg v. Hayes, 408 U.S. 665, 696-97 (1972) (citation omitted).

Misprision of a felony "require[s] both knowledge of a crime and some affirmative act of concealment or participation."  Id. at 696 n.36.  See, for example, United States v. Gravitt, 590 F.2d 123, 125-26 (5th Cir. 1979) (requiring

"affirmative action to conceal the crime" for conviction of misprision of a felony).

Thus, mere failure to report a known felony would not violate 18 U.S.C. § 4.

United States v. Johnson, 546 F.2d 1225, 1227 (5th Cir. 1977).

We conclude that misprision of a felony is a crime of moral turpitude

because it necessarily involves an affirmative act of concealment or participation in

a felony, behavior that runs contrary to accepted societal duties and involves

dishonest or fraudulent activity. As the Supreme Court has observed:

> Concealment of crime has been condemned throughout our history. . . .
> Although the term "misprision of felony" now has an archaic ring, gross
> indifference to the duty to report known criminal behavior remains a badge
> of irresponsible citizenship. This deeply rooted social obligation is not
> diminished when the witness to crime is involved in illicit activities himself.
> Unless his silence is protected by the privilege against self-incrimination . . .
> the criminal defendant no less than any other citizen is obliged to assist the
> authorities.

Roberts v. United States, 445 U.S. 552, 557-58 (1980).[3] See also Dirks v. SEC,

463 U.S. 646, 678 (1983) ("Misprison [sic] of a felony long has been against

public policy.") (Blackmun, J., dissenting).

---

[3] The Roberts Court went on to state that for a Fifth Amendment privilege to be relevant, "[a]t least where the Government had no substantial reason to believe that the requested disclosures [were] likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion." 445 U.S. at 559. Thus, because the defendant in Roberts did not raise any self-incrimination issues before the sentencing court, the Supreme Court deemed them waived and described his assertion of them on appeal to be "an afterthought." Id. at 560 (quoting Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 113 (1927)). Itani has not raised any Fifth Amendment issues in this case.

Thus, because Itani was convicted of misprision of a felony within five years after his date of entry and was sentenced to confinement for more than one year, the BIA properly found him deportable under 8 U.S.C. § 1251(a)(2)(A)(i).[4]

B.      Waiver of Inadmissibility

Itani also argues that the BIA improperly rejected his request for a waiver of inadmissibility, which would permit him to remain in the United States.  One of the requirements for receiving the waiver requested by Itani, known as a § 212(h) waiver, is a showing that his deportation would "result in extreme hardship" to a family member who is a United States citizen or lawful permanent resident.  8 U.S.C. § 1182(h) (1994).  The BIA found Itani failed to establish this requirement. Regardless of the merits of this decision, we have no jurisdiction to review such discretionary decisions of the Attorney General under IIRIRA's transitional rules.

---

[4] We need not discuss an alternative ground for Itani's deportation – overstaying his visa – because Itani does not raise any issue related to it on appeal. In addition, we note that our conclusion, supra, that Itani was convicted of a crime of moral turpitude forecloses his adjustment of status.  An alien in the United States applying for adjustment of status must be able to show he would qualify for admission to the United States, but conviction of a crime of moral turpitude renders an alien inadmissible.  See 8 U.S.C. § 1255(a) (1994) (requiring alien to be admissible in order to be eligible for adjustment of status to permanent resident); 8 U.S.C. § 1182(a)(2) (1994) (declaring inadmissible "any alien convicted of . . . a crime involving moral turpitude").

See <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1297-98 (11th Cir. 2001) (stating that "IIRIRA commands that in the case of a transitional alien, 'there shall be no appeal of any discretionary decision under section . . . 212(h)'" and finding determination of "extreme hardship" to be discretionary decision) (quoting IIRIRA § 309(c)(4)(E), 8 U.S.C. § 1101 note).[5]

### III. CONCLUSION

Therefore, for the reasons stated herein, we AFFIRM the decision of the BIA and DENY Itani's petition for review.

---

[5] Itani contends that his family's circumstances "drastically changed" between the IJ hearing in 1993 and the BIA's decision in 2001 and suggests he now can establish "extreme hardship." This argument does not impact our lack of jurisdiction to consider the denial of a § 212(h) waiver. And Itani's contention at oral argument – that the BIA's eight-year delay in issuing its decision violated his Due Process rights – also lacks merit.