[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12723
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2011
JOHN LEY
CLERK

Agency No. A075-854-934

STEPHEN OLUSEGUN BANJOKO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 19, 2011)

Before EDMONDSON, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Stephen Olusegun Banjoko, a native and citizen of Nigeria, petitions for

review of the final order by the Board of Immigration Appeals ("BIA") affirming

the decision of the Immigration Judge ("IJ"). The BIA concluded that Banjoko was removable for having committed a crime involving moral turpitude and entering into a fraudulent marriage, and denied his applications for asylum and relief under the Convention Against Torture ("CAT").[1] No reversible error has been shown; we dismiss the petition in part and deny it in part.

We review questions of subject matter jurisdiction de novo. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). We lack jurisdiction to review a final order of removal against an alien who is removable for having committed a crime involving moral turpitude punishable by a sentence of at least one year. Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1310 (11th Cir. 2006) (citing Immigration and Nationality Act ("INA") §§ 242(a)(2)(C), 212 (a)(2)(A), 8 U.S.C. §§ 1252(a)(2)(C), 1182(a)(2)(A)). Although the term "moral turpitude" is not defined by statute, we consider "crime[s] involving dishonesty or false statement" as involving moral turpitude. See Itani v. Ashcroft, 298 F.3d 1213, 1215 (11th Cir. 2002). In determining whether a crime involves moral turpitude, we take into account "the inherent nature of the offense, as defined in

_____

[1]The BIA also denied Banjoko's application for withholding of removal. Because Banjoko does not challenge this denial on appeal, that issue is deemed abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

the relevant statute, rather than the circumstances surrounding a defendant's particular conduct." Id. at 1215-16.

Banjoko pleaded guilty to -- and was convicted of -- conspiracy to commit witness tampering, in violation of 18 U.S.C. §§ 371, 1512(b)(1).[2] Section 1512(b)(1) provides criminal liability for knowingly attempting to intimidate, threaten, or persuade corruptly another person, or engaging in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of a person in an official proceeding. Because the statutory definition of Banjoko's offense involves dishonesty, it constitutes a "crime involving moral turpitude." For this reason, and because this offense is punishable by up to 20 years' imprisonment, we lack jurisdiction to review the BIA's final order of removal. See Vuksanovic, 439 F.3d at 1310. We do, however, retain limited jurisdiction to review whether Banjoko is "(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense." Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001). We may also consider constitutional claims or questions of law presented for review. INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

---

[2]At the removal hearing, the government admitted copies of Banjoko's judgment and guilty plea, without objection. These documents constituted clear and convincing evidence of his conviction. See INA § 240(c)(3)(A), (B), 8 U.S.C. § 1229a(c)(3)(A), (B).

We conclude that Banjoko, who is undisputably an alien, is removable, pursuant to INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), for having committed a crime involving moral turpitude within five years of being admitted. The term "admitted" is defined by statute to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A). Here, Banjoko entered the United States in 1994, without inspection, and later adjusted his status to that of a conditional permanent resident on August 13, 1998. In cases such as this one -- where an alien enters the country without inspection and later adjusts his status -- the alien is deemed to have been "admitted" when he adjusts his status. See In re: Rosas-Ramirez, 22 I.&N. Dec. 616, 619-23 (concluding that an alien who entered the country without inspection was "admitted" for purposes of INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) when she adjusted her status to that of "an alien lawfully admitted to permanent residence"). Thus, because Banjoko was "admitted" in August 1998 and committed his offense in May and June 2003 -- less than five years later -- he is removable pursuant to INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i).

Banjoko raises two constitutional challenges over which we have jurisdiction. We review constitutional challenges to removal proceedings de novo.

4

Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003). To establish a due process violation, Banjoko "must show that [he was] deprived of liberty without due process of law, and that the asserted errors caused [him] substantial prejudice." Id. at 1341-42. "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010).

At a removal hearing in 2005, the IJ made factual findings about the circumstances of Banjoko's marriage and concluded that he was removable for entering into a fraudulent marriage. The IJ also determined that the evidence established the allegations in the Notice to Appear, which included that Banjoko was convicted of conspiracy to commit witness tampering, a crime punishable by a term of imprisonment exceeding one year. At a second removal hearing in 2009, a second IJ -- in addition to denying Banjoko's application for asylum and CAT relief -- summarized the evidence from the 2005 removal hearing and determined that Banjoko was removable both for entering into a fraudulent marriage and for having committed a crime involving moral turpitude.

Banjoko argues that the second IJ violated his Fifth Amendment due process rights by making factual findings and conclusions of law about his

5

criminal conviction without personally hearing the evidence, observing witnesses, or listening to the parties' arguments on that issue. Because the evidence about Banjoko's conviction was already developed fully on the record, the second IJ's conclusions were consistent with the first IJ's decision, and the BIA concluded independently that Banjoko was removable for having committed a crime involving moral turpitude, Banjoko fails to establish that -- but for the second IJ's alleged constitutional error -- the outcome of his removal proceedings would have been different. See Lapaix, 605 F.3d at 1143.

Banjoko also argues that his Fifth Amendment due process rights were violated when the government presented a written declaration and hearsay testimony in lieu of his alleged wife's live testimony. Because the challenged evidence was relevant only to Banjoko's removability for entering into a fraudulent marriage -- and he was ordered removed on an independent ground -- he fails to demonstrate that he suffered substantial prejudice. See id.

PETITION DISMISSED IN PART, DENIED IN PART.